UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES DISTRICT COURT
FILED
SEP 16 2014
MICHAEL J. ROEMER, CLERK
WESTERN DISTRICT OF NY

ZENAIDA ACEVEDO, KELSIE REED,
JOANNA DWYER, and COLLEEN PITTS, on
behalf of themselves and all other employees
similarly situated,

          Plaintiffs,

      v.

WORKFIT MEDICAL LLC, WORKFIT
STAFFING LLC, DELPHI HEALTHCARE
PLLC, DELPHI HOSPITALIST SERVICES
LLC, and C. JAY ELLIE, JR., M.D.,

          Defendants.

**DECISION AND ORDER**

14-CV-06221 EAW

## INTRODUCTION

Plaintiffs Zenaida Acevedo, Kelsie Reed, Joanna Dwyer, and Colleen Pitts (collectively "Plaintiffs") filed this action on May 2, 2014, claiming (1) unpaid wages and overtime under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* (the "FLSA"); (2) unpaid wages under New York State law; (3) wage notice violations under New York State law; (4) untimely payment of wages under New York State law; (5) failure to maintain records under New York State law; (6) breach of express contract; (7) breach of implied contract; (8) breach of the implied covenant of good faith and fair dealing; (9) *quantum meruit*; and (10) unjust enrichment/restitution. (Dkt. 1). Plaintiffs have moved for conditional certification and expedited notice with respect to their FLSA claim. (Dkt.

-1-

14).  Defendants oppose Plaintiffs' motion (Dkt. 26) and have filed their own motion seeking dismissal of Plaintiffs' sixth, seventh, eighth, ninth, and tenth causes of action pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. 24).

For the reasons set forth below, Plaintiffs' motion for conditional certification is granted.  The parties are instructed to meet and confer for the purpose of proposing a jointly acceptable form and method of notice.  Defendants are ordered to provide Plaintiffs' counsel in both electronic and paper format a list of current and former hourly employees of Defendants during the three years preceding the filing of this lawsuit, including those individuals' names, addresses, telephone numbers, email addresses, and dates and location(s) of employment.  Defendants' motion to dismiss is granted as to the eighth cause of action and as to the sixth, seventh, ninth, and tenth causes of action to the extent they are based on an alleged failure to pay overtime wages, and it is denied in all other respects.

## BACKGROUND

Plaintiffs allege that defendant Dr. C. Jay Ellie, Jr. ("Dr. Ellie") formed defendants WorkFit Medical LLC ("WorkFit Medical"), WorkFit Staffing LLC ("Workfit Staffing"), Delphi Healthcare PLLC ("Delphi Healthcare"), and Delphi Hospitalist Services LLC ("Delphi Hospitalist Services") to provide hospital staffing, occupational health and related services in western New York. (Dkt. 1 at ¶¶ 9-12).  According to Plaintiffs, Dr.

Ellie owns and operates the four entity defendants, all of which are allegedly headquartered out of the same location in Rochester, New York. (*Id.* at ¶¶ 15-26, 35).

Plaintiffs claim that Defendants employed hourly employees at several locations in the western New York area, including their headquarters on Chili Avenue and offices in Batavia and Medina. (*See* Dkt. 16-4). Plaintiffs allege that hourly employees at Defendants' locations were subject to a "no overtime" policy pursuant to which employees who worked more than 40 hours in a workweek were not paid at time and a half their regular hourly rate for those hours worked but instead received compensatory time. (*Id.*). Plaintiffs claim that Defendants communicated this policy both verbally and in writing. (*Id.*). Plaintiffs contend that this policy violated both the FLSA and New York State law, as well as the terms of written and oral employment contracts they allegedly entered into with Defendants. (Dkt. 1).

Plaintiffs filed their complaint on May 2, 2014. (Dkt. 1). On May 23, 2014, Plaintiffs filed a motion for conditional certification of a collective action pursuant to the FLSA. (Dkt. 16). On June 27, 2014, Defendants filed their opposition to Plaintiffs' motion for conditional certification and a motion seeking dismissal of Plaintiffs' sixth, seventh, eighth, ninth, and tenth causes of action pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. 24, 26). Plaintiffs filed their opposition to Defendants' motion to dismiss and reply papers in further support of their motion for conditional certification on July 18, 2014. (Dkt. 29-32). Defendants filed reply papers in further

support of their motion to dismiss on August 1, 2014. (Dkt. 32). Oral argument on the pending motions was held on August 19, 2014. (Dkt. 34).

## DISCUSSION

### I.   Legal Standard

#### A.   Conditional Certification Under the FLSA

"Although they are not required to do so by FLSA, district courts have discretion, in appropriate cases, to implement [§ 216(b) of the FLSA] . . . by facilitating notice to potential plaintiffs of the pendency of the action and of their opportunity to opt-in as represented plaintiffs." *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010) (quotation omitted). This is often referred to as certification, although as the Second Circuit Court of Appeals observed in *Myers*, it is not "certification" in the traditional class action sense and "nothing in the text of the statute prevents plaintiffs from opting in to the action by filing consents with the district court, even when the notice . . . has not been sent, so long as such plaintiffs are 'similarly situated' to the named individual plaintiff who brought the action." *Id.* at 554 n.10.

District courts in this circuit apply a two-step method for determining whether to exercise their discretion under § 216(b):

> The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be "similarly situated" to the named plaintiffs with respect to whether a FLSA violation has occurred. The court may send this notice after plaintiffs make a modest factual showing that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law. At the second stage, the

-4-

> district court will, on a fuller record, determine whether a so-called "collective action" may go forward by determining whether the plaintiffs who have opted in are in fact "similarly situated" to the named plaintiffs. The action may be "de-certified" if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice.

*Id.* at 555 (internal citations and quotations omitted). The first of these steps is typically referred to as "conditional certification." *Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397, 402 (S.D.N.Y. 2012). On a motion for conditional certification, "the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Cunningham v. Elec. Data Sys*. Corp., 754 F. Supp. 2d 638, 644 (S.D.N.Y. 2010) (internal citations omitted).

### B.    Motion to Dismiss

"'In considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference.'" *Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 662 (2d Cir. 1996) (quoting *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)). A court should consider the motion "accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor." *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) (internal quotations and citation omitted). To withstand dismissal, a plaintiff must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "'A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (internal quotations and citations omitted). Thus, "at a bare minimum, the operative standard requires the plaintiff [to] provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (alteration in original) (internal quotations and citations omitted).

## II.    Plaintiffs' Motion for Conditional Certification

Plaintiffs have moved for conditional certification of an FLSA collective action. (Dkt. 14). In particular, Plaintiffs ask the Court to: (1) require the issuance of an expedited notice, as set forth in the form attached to their moving papers, to current and former hourly employees of Defendants during the three years preceding the filing of this lawsuit; (2) require Defendants to provide Plaintiff's counsel a list of all potential opt-in plaintiffs containing those individuals' names, addresses, phone numbers, locations of

employment, dates of employment, last four digits of social security numbers, dates of birth, and e-mail addresses; and (3) require Defendants to post a notice and consent form prominently at all of the worksites where hourly employees work.  (*Id.*).

Defendants oppose Plaintiffs' motion on multiple grounds.  First, Defendants argue that Plaintiffs have failed to meet their modest burden of demonstrating that they and the potential opt-in plaintiffs were the victims of a common policy or plan that violated the law. (Dkt. 26 at 16).  Second, Defendants contend that Plaintiffs cannot show that they are similarly situated to the potential opt-in plaintiffs. (*Id.* at 20).  Third, Defendants argue that ordering notice would prejudice Defendants, but that not ordering notice would not prejudice Plaintiffs. (*Id.* at 23).  Finally, Defendants oppose conditional certification on the basis that they have submitted numerous affidavits from potential opt-in plaintiffs indicating that they do not wish to participate in the collective action. (*Id.* at 24). Defendants also argue in the alternative that the Court should limit the conditional certification by company, department, and/or geography. (*Id.* at 25).

### A.    Plaintiffs' Burden

Plaintiffs' burden on a conditional certification motion is "minimal, especially since the determination that potential plaintiffs are similarly situated is merely a preliminary one." *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 104 (S.D.N.Y. 2003) (quotation omitted).  In this case, Plaintiffs have met this burden by producing affirmations that state, under penalty of perjury, that Plaintiffs and their

coworkers (several of whom are identified by name) were subject to a "no overtime" policy pursuant to which they received compensatory time for hours worked over 40 in a week rather than overtime pay. (Dkt. 16-4). Plaintiffs have also affirmed, under penalty of perjury, that this "no overtime" policy was communicated to employees verbally and in writing and was presented as company policy. (*Id*).

Plaintiff Joanna Dwyer alleges that she received emails from Defendants' human resources manager, director of operations, human resources director, and certified public accountant instructing her not to record more than 40 hours of work in a week and informing her that she would not be paid for overtime. (*Id*. at 14). Ms. Dwyer produces one of these emails and a corresponding letter that: (1) inform Ms. Dwyer of her "comp balance"; and (2) state that "any time over 40 hours will be tracked as comp time." (*Id*. at 19). Ms. Dwyer explains that these emails were sent to employees with "WorkFit and Delphi email addresses" and that she is therefore aware that all hourly employees were receiving the same instructions regarding overtime pay. (*Id*. at 14). Ms. Dwyer and fellow named plaintiff Colleen Pitts have also produced copies of documents provided to them by Defendants entitled "Notice and Acknowledgement of Pay Rate and Payday under Section 195.1 of the New York State Labor Law" that indicate an overtime pay rate of zero dollars. (*Id*. at 21, 32). Susan Tabone and Tracy Slocum, a former and a current employee of WorkFit Medical who have opted-in to this lawsuit, have also produced their "Notice and Acknowledgement of Pay Rate and Payday under Section 195.1 of the New

York State Labor Law" documents, each of which reflects an overtime pay rate of zero dollars. (*Id.* at 48; Dkt. 31-1 at 7). These documents state that they were prepared by Elizabeth Wagner, Human Resources Manager. (Dkt. 16-4 at 48, Dkt. 31-1 at 7). Ms. Tabone has also produced a document entitled "WorkFit Medical Comp Time Sheet" that she claims she was required to use to record the hours per week she worked over 40. (Dkt. 16-4 at 50).

Plaintiffs have met their minimal burden of making a modest factual showing that they and the potential opt-in plaintiffs were the victims of a common "no overtime" policy and that they are similarly situated to the potential opt-in plaintiffs. As discussed below, Defendants' attempts to rebut this showing are unavailing.

### B.      Employee Handbook Language

Defendants' first argument is that their employee handbook, which allegedly applies to WorkFit Medical, Workfit Staffing, Delphi Healthcare, and Delphi Hospitalist Services (Dkt. 26-2 at ¶ 10), states that non-exempt employees must be compensated for overtime hours at a time-and-a-half rate and that overtime pay requirements cannot be met through the use of compensatory time. According to Defendants, this language establishes that Defendants did not have a "no overtime" policy.

Courts considering FLSA conditional certification motions have not hesitated to reject arguments based on language in employee handbooks and corporate policies. *See Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397, 405 (S.D.N.Y. 2012) ("[T]he existence

of a formal policy that is facially unlawful is not a prerequisite for conditional certification.   Instead, it is sufficient to show that a facially lawful policy was implemented in an unlawful manner, resulting in a pattern or practice of FLSA violations."). *See also Essame v. SSC Laurel Operating Co. LLC,* 847 F. Supp. 2d 821, 828 (D. Md. 2012) ("[I]t is well-settled that the promulgation of written policies, per se, is insufficient to immunize an employer from conduct that otherwise contravenes the FLSA."); *Mitchel v. Crosby Corp.*, No. CIV.A. DKC 10-2349, 2012 WL 4005535 (D. Md. Sept. 10, 2012) (even in the face of written policies, "[b]y affirming in their declarations that Defendants refused to pay overtime hours and instructed Plaintiffs not to record all of their work on timesheets, Plaintiffs have adduced enough evidence to establish, preliminarily, that a common policy existed. . . ."); *Espenscheid v. DirecStat USA, LLC*, No. 09-CV-625-BBC, 2010 WL 2330309, at *7 (W.D. Wis. June 7, 2010) ("Defendants' handbook may not immunize defendants from an FLSA action where there is substantial evidence that they did not follow their own guidelines. . . ."); *Hoffman v. Securitas Sec. Servs.*, No. CV07-502-S-EJL, 2008 WL 5054684, at *8 (D. Idaho Aug. 27, 2008) ("[T]he apparent fact that Defendant had a written policy that on its face complied with the FLSA cannot be dispositive on the issue of conditional certification.  Otherwise, taken to its extreme, any defendant business entity with a compliant policy could prevent a collective action by simply pointing to the policy itself."); *Beauperthuy v. 24 Hour Fitness USA, Inc.*, No. 06-0715 SC, 2008 WL 793838, at *4 (N.D. Cal. Mar. 24, 2008)

("An employer's responsibility under the FLSA extends beyond merely promulgating rules to actually enforcing them.").

The Court agrees with the numerous other district courts that have considered this issue. The existence of a formal, written policy does not mean the FLSA was not violated in practice. To hold otherwise would allow employers to avoid FLSA liability simply by promulgating compliant handbooks and policies, regardless of their actual conduct. Defendants cannot defeat Plaintiffs' motion on this basis.

### C.     Rogue Manager/Different Departments

Defendants' second argument is that Plaintiffs have not shown they are similarly situated to the potential opt-in plaintiffs because "all of the current Plaintiffs and opt-in plaintiffs were employed at Workfit Medical in the occupational health/urgent care department and/or healthcare support services department," and were supervised by a "rogue manager," Terri Vangalio. (Dkt. 26 at 18).

Defendants' argument is contradicted by the factual evidence produced by Plaintiffs that indicates the no overtime policy extended beyond WorkFit Medical. Opt-in plaintiff Julie Goebert submitted an affirmation in support of Plaintiffs' motion that states she was employed as a physician recruiter for Delphi Healthcare and was subjected to the "no overtime" policy in that position. (Dkt. 16-4 at 22-25). Opt-in plaintiff Vanessa Reinhard submitted an affirmation in support of Plaintiffs' motion that states she

was employed as a credentialing coordinator for Delphi Healthcare and was subjected to the "no overtime" policy in that position. (*Id.* at 38-41).

The affirmations submitted by Plaintiffs also claim that the alleged policy went beyond Ms. Vangalio. For example, Joanna Dwyer and Colleen Pitts affirm that e-mails instructing hourly employees not to record more than 40 hours in a week came from Defendants' human resources manager, director of operations, human resources director, and certified public accountant. (Dkt. 16-4 at 14, 28). The letter submitted by Ms. Dwyer that states "any time over 40 hours will be tracked as comp time" is addressed "[t]o all WorkFit hourly employees." (*Id.* at 19). Plaintiffs have also submitted with their reply papers an affirmation by opt-in plaintiff Tracy Slocum stating that she works at Workfit Medical's Albany location and has never met or spoken to Terri Vangalio, yet was subjected to the "no overtime" policy. (Dkt. 31-1 at 2-5).

The merits of Plaintiffs' claims are not relevant on a motion for conditional certification, *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 391 (W.D.N.Y. 2005), and "[a]ttacks on credibility are not properly decided by the Court on a motion for conditional certification." *Bifulco v. Mortgage Zone, Inc.*, 262 F.R.D. 209, 214 (E.D.N.Y. 2009). Plaintiffs have presented evidence that the "no overtime" policy extended to multiple companies and was known of and enforced by numerous members of Defendants' management team. Defendants' contradictory evidence, while certainly relevant to the merits of Plaintiffs' underlying claims, is not sufficient to defeat a conditional

certification motion. "If discovery reveals that some employees are not similarly situated, the class can be redefined or decertified." *Scholtisek*, 229 F.R.D. at 390. However, Plaintiffs have met their minimal burden at this preliminary state of the proceedings.

The cases relied upon by Defendants are readily distinguishable. For example, in *Seever v. Carrols Corp.*, 528 F. Supp. 2d 159 (W.D.N.Y. 2007), the plaintiffs sought conditional certification with respect to more than 300 stores while presenting relevant evidence as to only one store. *Id.* at 173-74. The other out-of-circuit cases cited by Plaintiffs with respect to their "rogue manager" argument similarly involved practices that varied by location and/or manager. Here, although Defendants attempt to argue that the "no overtime" policy was limited to Ms. Vangalio, Plaintiffs' evidence indicates otherwise.

Defendants' reliance on *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 180 L.Ed.2d 374 (2011) is particularly misplaced. In *Dukes*, the United States Supreme Court considered a motion for class certification under Federal Rule of Civil Procedure 23 in the context of a gender discrimination claim, not a motion for conditional certification under the FLSA. 131 S. Ct. at 2548. "[N]umerous courts, including district courts in this Circuit, have refused to apply *Dukes* on motions for conditional certification under the FLSA, concluding that the Rule 23 analysis had no place at this stage of the litigation." *Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397, 409 (S.D.N.Y. 2012). Moreover, the

only common policy established by the *Dukes* plaintiffs was the policy of "allowing discretion by local supervisors over employment matters." 131 S. Ct. at 2554. In this case, by contrast, Plaintiffs have produced evidence that Defendants had a uniform policy, adopted by management, of requiring hourly employees to take compensatory time in lieu of overtime pay. The factors that led to the outcome in *Dukes* are not present in this case.

Defendants also cite several cases in which courts in this circuit denied conditional certification motions with respect to "no overtime" allegations. These cases also involved factual situations not present here. In *Hasely v. Travel Team, Inc.*, No. 10-CV-0838A(Sr), 2011 WL 6100610 (W.D.N.Y. Sept. 13, 2011), the defendant made a motion to deny certification and the plaintiff "did not submit an affidavit in response to this motion and her complaint lack[ed] any factual specificity with respect to the assertion defendant willfully failed to record all the time that its employees worked." *Id.* at *3. In *Diaz v. Electronics Boutique of America, Inc.*, No. 04-CV-0840E(SR), 2005 WL 2654270 (W.D.N.Y. Oct. 17, 2005), the court denied conditional certification of exempt and nonexempt employees together because of the different factual inquiries that would be required with respect to each class of employees. *Id.* at *3. Here, the proposed collective class only includes hourly employees and Plaintiffs have not claimed that any of the proposed class members were improperly classified as exempt. Finally, the opinion in *Madrid v. Minolta Business Solutions, Inc.*, No. 02 CV 2294 (GBD), 2002 WL

31190172 (S.D.N.Y. Oct. 2, 2002), was later withdrawn and involved a plaintiff who failed to produce evidence that employees in positions other than her own were not paid for overtime. *Id.* at *2.

### D.   Necessity of Individualized Inquiries

Defendants contend that Plaintiffs' claims are not amenable to generalized evidence and that conditional certification is therefore inappropriate. In addition to being an argument that is better considered at the second stage of the FLSA certification inquiry on a fuller factual record, Defendants' argument ignores the gravamen of Plaintiffs' complaint: that Defendants had a uniform policy of refusing to pay overtime to all hourly employees. This is a common question of law that is amenable to common proof and determination. As such, "[e]ven if some variations exist among plaintiffs that would require dividing the plaintiffs into subclasses, it would presently appear that judicial economy would still favor keeping the plaintiffs in a single case." *Vennet v. Am. Intercontinental Univ. Online*, No. 05 C 4889, 2005 WL 6215171, at *8 (N.D. Ill. Dec. 22, 2005) (conditionally certifying FLSA collective action based on alleged failure to pay overtime); *see also Summa v. Hofstra Univ.*, 715 F. Supp. 2d 378, 390 (E.D.N.Y. 2010) ("[T]he fact that the putative class involves a variety of diverse positions . . . and requires an individualized inquiry into each putative class member does not undermine the conditional certification of the class. . . .").

### E.   Defendants' Competing Declarations

Defendants have also submitted numerous declarations from hourly employees that state, under penalty of perjury, that: (1) the employees were properly paid for overtime work; and (2) the employees do not wish to join this action.   These declarations are irrelevant at this stage of the proceedings.   In the context of conditional certification, "courts in this Circuit regularly refuse to rely on such [opposing] declarations when plaintiffs have not yet had an opportunity to depose the declarants."   *Heitzenrater v. Officemax, Inc.*, No. 12-CV-900S, 2014 WL 448502, at *4 (W.D.N.Y. Feb. 4, 2014) (quotation omitted and alteration in original).   This is because "balancing of the competing affidavits would require credibility determinations and the resolution of legal contentions, and such conclusions are inappropriate at this stage of the proceeding." *Id.*; *see also Amador v. Morgan Stanley & Co. LLC*, No. 11 CIV. 4326 (RJS), 2013 WL 494020, at *8 (S.D.N.Y. Feb. 7, 2013) ("[S]tatements gathered by an employer from its current employees are of limited evidentiary value in the FLSA context because of the potential for coercion.").   Defendants cannot defeat Plaintiffs' conditional certification motion by appealing to credibility issues or factual disputes.

### F.   Limitations by Company, Geography, or Department

Defendants argue in the alternative that the Court should limit the collective action to hourly employees of WorkFit Medical employed in the occupational health/urgent care

and/or healthcare support services department in western New York. The Court considers each of Defendants' proposed limitations below.

### 1. Limitations by Company

Defendants claim that the collective action should be limited to WorkFit Medical because: (1) WorkFit Staffing has no current employees and only had employees between January 2011, and February 2011, outside the statute of limitations for an FLSA claim; (2) Delphi Healthcare employs only physicians and physicians are exempt from the FLSA's overtime requirements; and (3) Delphi Hospitalist Services' employees do not work more than 40 hours per week.

Defendants' argument with respect to Delphi Healthcare is unavailing. As discussed above, opt-in plaintiffs Julie Goebert and Vanessa Reinhard specifically affirm that they were employed as hourly employees by Delphi Healthcare and that they were subjected to the "no overtime" policy in these positions. (Dkt. 16-4 at 22-25, 38-41). Other than disputing these assertions in a conclusory fashion, Defendants do not adequately respond to or address these claims by Ms. Goebert and Ms. Reinhard.

The Court also is not persuaded by Defendants' argument with respect to Delphi Hospitalist Services. Plaintiffs have presented evidence that Defendants' "no overtime" policy was uniform and applied to individuals employed by Delphi entities, which were owned by the same individual. At this stage of the proceedings, a statement by Defendants that Delphi Hospitalist Services' employees do not work over 40 hours a

week, unsupported by documentary evidence, is insufficient to defeat Plaintiffs' showing. *See Karic v. Major Auto. Cos., Inc.*, 799 F. Supp. 2d 219, 227 (E.D.N.Y. 2011) (plaintiffs need not submit declarations as to every entity in order to meet lenient standard); *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 678 F. Supp. 2d 89, 93 (E.D.N.Y. 2010) (conditionally certifying collective action at three locations even though all named plaintiffs worked at a single location because of common ownership); *Capsolas v. Pasta Res., Inc.*, No. 10 CIV. 5595(RJH), 2011 WL 1770827, at *4 (S.D.N.Y. May 9, 2011) (conditionally certifying collective action across eight restaurants with common ownership even though there were no named plaintiffs from three of the restaurants).

With respect to WorkFit Staffing, accepting Defendants' representations as true, no current or former employees of this entity would be included in the proposed collective action, as it allegedly had no employees in the three year period preceding the filing of this lawsuit. In other words, Defendants will not be required to provide any information related to former employees of WorkFit Staffing or to otherwise involve them in this matter if, in fact, the entity had no employees during the relevant statute of limitations period. Therefore, the Court sees no prejudice to Defendants in including this entity in the collective action. Moreover, Defendants have submitted a sworn statement from Matthew Huntington, their Director of Operations, that states "WorkFit Staffing LLC . . . currently provides temporary staffers in the occupational health field." (Dkt. 26-2 at ¶ 4). It is unclear how this can be the case if WorkFit Staffing has no employees.

-18-

Given the factual disputes between the parties, it would undermine the "broad, remedial purposes of the FLSA" to exclude WorkFit Staffing from the collective action at this preliminary stage of the litigation. *Summa v. Hofstra Univ.*, 715 F. Supp. 2d 378, 390 (E.D.N.Y. 2010).

### 2.     Limitations by Geography

Defendants also argue that the collective action should be limited to Defendants' western New York offices.   However, Plaintiffs have produced an affirmation by opt-in plaintiff Tracy Slocum affirming that the "no overtime" policy is also applied at Defendants' Albany location.  (Dkt. 31-1 at 2-5).  Under these circumstances, the Court will not limit the collective action to the western New York locations.   Indeed, Defendants conceded this point at the oral argument on the instant motions.

### 3.     Limitations by Department

Finally, Defendants argue that the collective action should be limited to two departments within WorkFit Medical.  This argument is unavailing.  First, the Court has already determined that the collective action should not be limited to WorkFit Medical. Second, Plaintiffs have produced evidence that the "no overtime" policy applied to *all* hourly employees, as reflected by a letter addressed to "all WorkFit hourly employees" that states "any time over 40 hours will be tracked as comp time." (Dkt. 16-4 at 19). Defendants' opposing declarations are insufficient to rebut this showing for purposes of a conditional certification motion.

In addition, the Court is not persuaded by Defendants' argument that the so-called *"per diem"* employees should be excluded from any notice. Kathy Bodley, WorkFit Medical's human resources manager, submitted a sworn declaration in which she stated that these "temporary staffers" are paid on an "hourly basis." (Dkt. 26-4 at ¶ 5). Ms. Bodley also conceded that, although it is not typical, these "temporary staffers" sometimes work in excess of 40 hours per week. (*Id.* at ¶ 8).

In light of the clear factual disputes between the parties regarding employee classifications (for example, Ms. Goebert and Ms. Reinhard claim to have been employed by Delphi Healthcare, while Defendants claim that this entity only employs physicians), the Court cannot determine at this stage of the litigation that these "temporary staffers" are not "hourly employees" who were subjected to the alleged "no overtime" policy. In fact, Defendants have represented to the Court that a significant number of WorkFit Medical's employees are "temporary" or *"per diem"* employees – for example, the staffing department allegedly consists of only four regular employees and approximately 175 "temporary staffers." (Dkt. 26-4 at ¶ 4). Defendants have not made it clear how they define *"per diem"* employees or "temporary staffers," and they have, in some places, conflated *"per diem"* employees/"temporary staffers" with employees paid on an hourly basis. (*See* Dkt. 26-4 at 5). The Court has already determined that the collective action should not be limited to a few departments within WorkFit Medical, as urged by Defendants. By excluding "temporary staffers" from receiving notice, the Court would

-20-

essentially be ceding to Defendants the power to define employees in particular ways and thereby accomplish the objective of excluding particular entities and/or departments from the collective action.

"[U]nder section 216(b) [of the FLSA] parties may be similarly situated, despite not occupying the same positions or performing the same job functions and in the same locations, provided that they are subject to a common unlawful policy or practice." *Colozzi v. St. Joseph's Hosp. Health Ctr.*, 595 F. Supp. 2d 200, 207 (N.D.N.Y. 2009). On the record before the Court, the *per diem* employees should receive notice of the collective action, keeping in mind that "[i]f discovery reveals that some employees are not similarly situated, the class can be redefined or decertified." *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 390 (W.D.N.Y. 2005).

## G.    Temporal Limitations

Plaintiffs seek to include in the collective action all current and former hourly employees of Defendants for the three years preceding the filing of this lawsuit. Defendants argue that the collective action properly includes only those individuals who were employed within three years of the date of entry of this Decision and Order. In response, Plaintiffs point out that equitable tolling may be available to future opt-in plaintiffs, depending on what discovery reveals.

> [B]ecause the three-year statute of limitations period for willful FLSA violations runs for each individual plaintiff until that plaintiff consents to join the action, notice should generally be directed to those employed within three years of the date of the mailing of the notice. However,

> because equitable tolling issues often arise for prospective plaintiffs, courts frequently permit notice to be keyed to the three-year period prior to the filing of the complaint, with the understanding that challenges to the timeliness of individual plaintiffs' actions will be entertained at a later date.

*Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397, 410 (S.D.N.Y. 2012) (citations and quotation omitted) (collecting cases); *see also Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 451 (S.D.N.Y. 2011) ("Plaintiffs allege that equitable tolling may extend the statute of limitations for certain prospective plaintiffs. Therefore, it is appropriate for notice to be sent to the larger class of prospective members. . . .").

Considerations of judicial economy and fairness support permitting notice to individuals who may have a colorable argument that the statute of limitations should be equitably tolled. *See, e.g., Upadhyay v. Sethi*, 848 F. Supp. 2d 439, 445 (S.D.N.Y. 2012) (equitable tolling of FLSA claims may be available where employees were unaware of their claims and employer failed to apprise them of their rights). The merits of the employees' claims can be reserved for a later date. *See Whitehorn*, 767 F. Supp. 2d at 451.

Defendants also ask the Court to impose a deadline for potential plaintiffs to opt-in to the litigation. The Court declines to do so at this time. The parties are instructed to discuss the issue of opt-in deadlines and to include either a mutually acceptable resolution or a statement of the parties' respective positions in the submission required by Part III of this Decision and Order.

For the foregoing reasons, the Court grants Plaintiffs' motion for conditional certification and conditionally certifies a collective action as to all current and former hourly employees of Defendants for the three years preceding the filing of this lawsuit.

## III.   Content and Manner of Notice

The parties vigorously contest the appropriate content of the notice to be sent to potential opt-in plaintiffs and the manner in which it should be provided. It is common under such circumstances for the Court to instruct the parties to confer and submit a joint proposed notice, or, if they are unable to reach agreement, to submit separate proposed notices. *See, e.g., Guan Ming Lin v. Benihana Nat. Corp.*, 275 F.R.D. 165, 178 (S.D.N.Y. 2011); *Keller v. AXA Equitable Life Ins. Co.*, No. 12 CIV. 4565 LTS RLE, 2013 WL 6506259, at *8 (S.D.N.Y. Dec. 12, 2013); *Gortat v. Capala Bros., Inc.*, No. 07CV3629(ILG)(SMG), 2009 WL 3347091, at *10 (E.D.N.Y. Oct. 16, 2009).

The Court therefore instructs the parties to confer and submit a joint proposal with respect to the content and manner of dissemination of the notice in this matter within 20 days of entry of this Decision and Order. The parties are encouraged to review the discussion in *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101 (S.D.N.Y. 2003), regarding the appropriate form of notice in a collective action. In the event the parties are unable to agree, they are instructed to make a single joint submission no longer than 15 pages to the Court consisting of each party's proposal and legal authority

setting forth the areas of disagreement and the parties' respective positions as to each within 20 days of entry of this Decision and Order.

## IV.   List of Potential Plaintiffs

Plaintiffs ask the Court to order Defendants to produce in both electronic and paper form a list of all current and former hourly employees of Defendants for the three year period preceding the filing of this lawsuit, including those individuals' names, addresses, telephone numbers, locations of employment, dates of employment, last four digits of social security numbers, dates of birth, and email addresses. Defendants contend that this request is overbroad and that the list should not include the potential plaintiffs' telephone numbers, last four digits of social security numbers, dates of birth, and/or email addresses due to privacy considerations.

"When a court approves notice to the putative class, discovery of the names and addresses of putative class members has consistently been granted." *Ruggles v. WellPoint, Inc.*, 591 F. Supp. 2d 150, 162 (N.D.N.Y. 2008). With respect to any additional requests for information, the Court must consider whether the request would violate potential plaintiffs' privacy rights. *See, e.g., Rosario v. Valentine Ave. Disc. Store, Co., Inc.*, 828 F. Supp. 2d 508, 522 (E.D.N.Y. 2011) (finding disclosure of names, last known addresses, telephone numbers, and dates of employment to be appropriate, but not requiring disclosure of social security numbers or dates of birth).

Here, Plaintiffs argue that they need the last four digits of the potential plaintiffs' social security numbers in order to locate potential plaintiffs if notices are returned as undeliverable. (Dkt. 31-2). The Court is not persuaded that this rationale justifies disclosure of such sensitive information, particularly given that the Court has no way of knowing if and/or how many notices will be returned as undeliverable. *See Rosario*, 828 F. Supp. 2d at 522 ("If plaintiff is unable to effectuate notice on some potential opt-in plaintiffs with the information that is produced, plaintiff may renew his application for additional information regarding those specific employees."). The Court also will not order the disclosure of the potential plaintiffs' dates of birth, due to similar privacy concerns. However, Plaintiffs have adequately justified their need for potential plaintiffs' telephone numbers and email addresses in order to successfully and efficiently contact the potential plaintiffs. *See Rosario*, 828 F. Supp. 2d at 508 (ordering disclosure of telephone numbers); *Melgadejo v. S & D Fruits & Vegetables Inc.*, No. 12 CIV. 6852 (RA) (HBP), 2013 WL 5951189, at *7 (S.D.N.Y. Nov. 7, 2013) ("Disclosure of the names, addresses, telephone numbers and email addresses of putative class members is commonplace . . . because such information is essential to identifying and notifying potential opt-in plaintiffs."); *Capsolas v. Pasta Res., Inc.*, 10 CIV. 5595 (RJH), 2011 WL 1770827, at *5 (S.D.N.Y. May 9, 2011) (ordering disclosure of telephone numbers). The Court thus limits the required disclosure to names, last known addresses, telephone numbers, email addresses, and dates and location(s) of employment. Defendants are

-25-

ordered to provide the list to Plaintiffs' counsel within 20 days of entry of this Decision and Order.

## V.    Defendants' Motion to Dismiss

Defendants have moved to dismiss Plaintiffs' sixth, seventh, eighth, ninth, and tenth causes of action.   These causes of action are for, respectively:   breach of express contract; breach of implied contract; breach of the implied covenant of good faith and fair dealing; *quantum meruit*; and unjust enrichment/restitution.   Defendants move to dismiss these claims on the following grounds:   (1) Plaintiffs' common law causes of action are preempted by their FLSA claim; (2) Plaintiffs' breach of contract claim fails to adequately allege the existence of an employment agreement between the parties; (3) Plaintiffs' breach of the implied covenant of good faith and fair dealing claim fails to allege the existence of an employment agreement and is duplicative of the breach of contract action; and (4) Plaintiffs' quasi-contract claims are duplicative of Plaintiffs' statutory and contractual claims, and Plaintiffs already have adequate remedies at law. The Court considers each of these arguments below.

### A.    Preemption

"The law is unsettled as to whether the FLSA preempts state common law claims." *Chen v. St. Beat Sportswear, Inc.*, 364 F. Supp. 2d 269, 293 (E.D.N.Y. 2005).   Several decisions from this Court have indicated that state common law claims for unpaid overtime are preempted by the FLSA. *See Barrus v. Dick's Sporting Goods, Inc.*, 732 F.

Supp. 2d 243, 263 (W.D.N.Y. 2010) (dismissing "plaintiffs' common law claims seeking allegedly unpaid overtime as preempted by FLSA"); *Gordon v. Kaleida Health*, No. 08-CV-951S, 2012 WL 171577, at *7 (W.D.N.Y. Jan. 17, 2012) ("[T[o the extent Plaintiffs are seeking unpaid overtime wages that are available under the FLSA, their common law claims are preempted. . . ."); *Hinterberger v. Catholic Health Sys.*, 08-CV-952S, 2012 WL 125270 (W.D.N.Y. Jan. 17, 2012) ("[T]o the extent Plaintiffs are seeking unpaid overtime wages that are available under the FLSA, their claims are preempted. . . ."), *rev'd and remanded,* 548 F. App'x 3 (2d Cir. 2013); *Lopez v. Flight Servs. & Sys., Inc.*, No. 07-CV-6186 CJS, 2008 WL 203028, at *7 (W.D.N.Y. Jan. 23, 2008) (dismissing state common law claims for fraud, breach of contract, breach of implied covenant of good faith, tortious interference with contract, and unjust enrichment as preempted by the FLSA), *overruled in non-relevant part by Barrus*, 732 F. Supp. 2d at 263.

Other courts in this circuit have reached the same conclusion. *See, e.g., DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc.,* 770 F. Supp. 2d 497, 532-33 (E.D.N.Y. 2011) ("[T]his Court agrees with the numerous other courts that have found the FLSA's civil enforcement scheme to be exclusive and, accordingly, concludes that FLSA preempts any state common law claims that are duplicative of plaintiffs' FLSA cause of action.").

The Second Circuit Court of Appeals recently vacated the decision in *Hinterberger*, based on the unique procedural posture of that case. 548 F. App'x 3, 5 (2d

-27-

Cir. 2013).  In *Hinterberger*, the defendants had filed a notice of removal with respect to the plaintiffs' state complaint asserting common law claims.  *Id.* at 4.  The plaintiffs sought remand to state court on the ground that the district court lacked jurisdiction over the claims.  *Id.*  The district court disagreed with the plaintiffs, holding that it had subject matter jurisdiction because the FLSA precluded the plaintiffs' overtime pay claims.  *Id.* The Second Circuit Court of Appeals reversed on this point, explaining that the "artful pleading doctrine" permits removal based on preemption only if federal law *completely* preempts the relevant state law claims.[1]  *Id.* at 4-5.  Because the FLSA is not one of the few federal statutes that supports complete preemption, the Second Circuit Court of Appeals vacated the district court's decision, while specifically noting that the defendants would have the opportunity later to present an "ordinary FLSA preemption defense."  *Id.* at 5 n.1.

Plaintiffs argue that the Second Circuit Court of Appeals' decision in *Hinterberger* stands for the proposition that state common law claims are not preempted by the FLSA. Plaintiffs overstate the holding in *Hinterberger*, which considered only whether the FLSA supported complete preemption and expressly did not decide whether an ordinary preemption defense would succeed.  "Many federal statutes – far more than support

---

[1]     "Under the complete-preemption doctrine, certain federal statutes are construed to have such 'extraordinary' preemptive force that state-law claims coming within the scope of the federal statute are transformed, for jurisdictional purposes, into federal claims – i.e., completely preempted." *Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 272 (2d Cir. 2005).

complete preemption – will support a defendant's argument that because federal law preempts state law, the defendant cannot be held liable under state law." *Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 272-73 (2d Cir. 2005). For example, in *Sullivan*, the Second Circuit Court of Appeals held that although the Railway Labor Act supported an ordinary preemption defense, it did not support complete preemption. *Id.*

Here, the issue is not whether the FLSA completely preempts state law claims – it plainly does not. The issue is whether the FLSA preempts the particular common law claims brought by Plaintiffs. Plaintiffs urge the Court to find that *Barrus* and *DeSilva* were incorrectly decided and that the FLSA does not preempt state common law claims that duplicate FLSA overtime claims.

Preemption may be express or implied, and implied preemption may take the form of either field preemption or conflict preemption. *Curtin v. Port Auth. of N.Y. & N.J.*, 183 F. Supp. 2d 664, 667 (S.D.N.Y. 2002). "Conflict preemption arises where (1) 'compliance with both federal and state regulations is a physical impossibility' or (2) the state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* (quoting *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992)). In *DeSilva*, the District Court for the Eastern District of New York, in line with numerous other federal courts that have considered the issue, determined that conflict preemption existed as to the plaintiffs' state common law overtime claims because:

> to allow plaintiffs to pursue duplicative state-law claims and thus circumvent the remedial scheme established by the FLSA would render superfluous the requirement in Section 216(c) that a party's private right terminate upon commencement of an action by the Secretary of Labor. Consequently, allowing state common law claims to proceed based on the same facts as a party's FLSA claims would present an obstacle to enforcement of the FLSA by allowing plaintiffs to thwart Congress' preference, as evidenced in Section 216(c), to have FLSA violations be prosecuted by the Department of Labor, if and when the Secretary determines that such action is appropriate.

770 F. Supp. 2d at 532; *see also Sosnowy v. A. Perri Farms, Inc.,* 764 F. Supp. 2d 457, 467 (E.D.N.Y. 2011) ("[T]hrough the comprehensive remedial scheme [of the FLSA], Congress struck the intended balance between the purpose of the FLSA and the vindication of its provisions, and therefore allowing additional remedies for duplicative claims would serve as an obstacle to the enforcement of the FLSA."). The decisions of the district courts in this Circuit that the FLSA preempts common law claims are consistent with decisions from the First and Fourth Circuit Courts of Appeals holding that the elaborate enforcement mechanism adopted by the FLSA is the exclusive remedy for violations of its mandates. *See Anderson v. Sara Lee Corp.,* 508 F.3d 181, 194 (4th Cir. 2007) (collecting cases); *Roman v. Maietta Const., Inc.,* 147 F.3d 71, 76 (1st Cir. 1998). *Cf. Herman v. RSR Sec. Servs. Ltd.,* 172 F.3d 132, 144 (2d Cir. 1999) (the FLSA has "a comprehensive remedial scheme" and therefore preempts state common law claims for contribution or indemnification). *But see Williamson v. Gen. Dynamics Corp.,* 208 F.3d 1144, 1153 (9th Cir. 2000) (state common law fraud claim not preempted by FLSA's anti-retaliation provision).

Plaintiffs cite a number of out-of-circuit cases in which district courts held that particular state law claims were not preempted by the FLSA. (*See* Dkt. 29 at 8-9). None of these cases addresses the issue raised by *DeSilva* – namely, that permitting duplicative state common law claims as to Plaintiffs' unpaid overtime claims would frustrate Congress' intent to permit the Department of Labor to enforce such claims where appropriate. The Court finds unpersuasive Plaintiffs' argument that the district court cases from this Circuit should be revisited. Plaintiffs' state common law claims are thus preempted to the extent they seek unpaid overtime wages.

However, Plaintiffs correctly point out that their complaint also alleges a failure to pay straight time wages for certain hours. Straight time wage claims are not preempted by the FLSA. *See Barrus*, 732 F. Supp. 2d at 263; *DeSilva*, 770 F. Supp. 2d at 532–33. To the extent Plaintiffs' state common law claims seek unpaid straight time wages, they will be permitted to proceed.

### B.   Failure to Allege an Employment Agreement

Defendants also seek dismissal of Plaintiffs' breach of express contract, breach of implied contract, and breach of the implied covenant of good faith and fair dealing claims on the basis that Plaintiffs have failed to adequately allege the existence of an employment agreement. However, the complaint alleges that "Defendants and Named Plaintiffs and class members entered into a contract for employment, including implied contracts and express contracts" and that "Defendants . . . entered into express oral

contracts with Named Plaintiffs," the terms of which "included that Named Plaintiffs and class members provide their labor and services in a specified role for Defendants, in exchange for an agreed upon hourly pay rate for 'all hours worked' by Plaintiffs." (Dkt. 1 at ¶¶ 130-32). With respect to the Named Plaintiffs, the complaint alleges the roles and hours in which they worked. (*See* Dkt. 1 at ¶¶ 58-88). Although these allegations are not particularly fulsome, they are sufficient to clear the pleading bar. *See, e.g., Kaplan v. Aspen Knolls Corp.*, 290 F. Supp. 2d 335, 338 (E.D.N.Y. 2003); *Wilk v. VIP Health Care Servs., Inc.*, No. 10 CIV. 5530 ILG JMA, 2012 WL 560738 (E.D.N.Y. Feb. 21, 2012). The allegations in the complaint identify the terms of the relevant contract that were allegedly breached, provide Defendants with adequate notice of the claims against them, and state plausible claims.

## C.    Duplicativeness

Defendants also argue that Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing and Plaintiffs' quasi-contract claims should be dismissed as duplicative of the breach of contract claims.

Defendants' argument is well-founded with respect to Plaintiffs' implied covenant claim. "A claim for breach of the implied covenant will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach . . . of an express provision of the underlying contract." *Harris v. Provident Life & Acc. Ins. Co.*, 310 F.3d 73, 80 (2d Cir. 2002). In this case, Plaintiffs have not alleged any breach

of the implied covenant separate from the alleged breaches of the express terms of the contract(s).  Under these circumstances, dismissal is appropriate.

However, Plaintiffs' quasi-contract claims should be permitted to proceed as alternative theories of recovery.  Defendants appear to dispute the existence of a contract between themselves and Plaintiffs.  Quasi-contract theories state a viable alternative claim where the existence of the alleged contract is in dispute.  *See Ironforge.com v. Paychex, Inc.,* 747 F. Supp. 2d 384, 398 (W.D.N.Y. 2010) (quasi-contract claims may be pled in the alternative where a *bona fide* dispute exists as to the existence of a valid contract); *Net2Globe Int'l, Inc. v. Time Warner Telecom of N.Y.*, 273 F. Supp. 2d 436, 466 (S.D.N.Y. 2003) (unjust enrichment claim could proceed in the alternative because the validity of the contract was in dispute).

## CONCLUSION

Plaintiffs' motion for conditional certification is granted as set forth above.  The parties are instructed to meet and confer for the purpose of proposing a jointly acceptable form and method of notice and to provide the court with a joint submission within 20 days of entry of this Decision and Order setting forth the jointly acceptable form and method of notice or, if the parties are unable to agree, a joint submission no longer than 15 pages setting forth the parties' proposals and areas of disagreement.  Within 20 days of entry of this Decision and Order, Defendants are ordered to provide Plaintiffs' counsel in both electronic and paper format a list of current and former hourly employees of

Defendants during the three years preceding the filing of this lawsuit, including those individuals' names, last known addresses, telephone numbers, email addresses, dates and location(s) of employment.   Defendants' motion to dismiss is granted as to the eighth cause of action, and as to the sixth, seventh, ninth, and tenth causes of action to the extent they are based on an alleged failure to pay overtime wages, and the motion is otherwise denied.

   SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: September 16, 2014
   Rochester, New York