UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ZENAIDA ACEVEDO, KELSIE REED, JOANNA DWYER, and COLLEEN PITTS, *on behalf of themselves and all other employees similarly situated,*<br><br>*Plaintiffs,*<br><br>v.<br><br>WORKFIT MEDICAL, LLC, WORKFIT STAFFING LLC, DELPHI HEALTHCARE PLLC, DELPHI HOSPITALIST SERVICES LLC, and C. JAY ELLIE, JR., M.D.,<br><br>*Defendants.* | Civil Action No.<br><br>**14-cv-06221 EAW(MWP)** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT**

Michael J. Lingle
Sarah E. Cressman
Jonathan W. Ferris
THOMAS & SOLOMON LLP
693 East Avenue
Rochester, New York 14607
Telephone: (585) 272-0540

Kevin G. Johnson
KLAFEHN HEISE & JOHNSON PLLC
109 Main Street
Brockport, New York 14420
Telephone: (585) 431-2074

*Attorneys For Plaintiffs*

TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................iii, iv

INTRODUCTION ...........................................................................................1

RELEVANT FACTUAL BACKGROUND ...........................................................2

    *Negotiations and Settlement* ...................................................................2

    *The Court Preliminarily Approved the Settlement Agreement* ......................2

    *Settlement Amount* ...............................................................................3

    *Plan of Allocation* ................................................................................3

    *Relase of Claims* ..................................................................................4

    *Settlement Administration* .......................................................................5

ARGUMENT ................................................................................................6

    I.     THE COURT SHOULD GRANT FINAL APPROVAL OF THE
          SETTLEMENT ...............................................................................6

          A. Complexity, Expense, and Likely Duration.................................7

          B.  Reaction of the Class to the Settlement ....................................8

          C.  Stage of Proceedings and Amount of Discovery ........................9

          D. Risks of Establishing Liability and Damages, and of
             Maintaining the Class Through Trial........................................9

          E.  Defendants' Ability to Withstand a Greater Judgment
             Is Not Assured ....................................................................11

          F.  The Range of Reasonableness of the Settlement in Light    of
          the Best Possible Recovery and Attendant Risks of
             Litigation ..........................................................................11

    II.     CERTIFICATION OF THE RULE 23 SETTLEMENT CLASS
          SHOULD BE CONFIRMED...............................................................13

          A. The Prerequisites of Rule 23 Are Satisfied..............................13

             1.   Rule 23(a)(1):  Numerosity Requirement......................14

             2.   Rule 23(a)(2):  Commonality Requirement ...................14

             3.   Rule 23(a)(3):  Typicality Requirement.........................14

             4.   Rule 23(a)(4):  Adequacy of Representation Requirement...........15

5.   **Rule 23(b)(3):  Predominance Requirement** ..................................16

6.   **Rule 23(b)(3):  Superiority Requiremen**t .......................................17

**CONCLUSION** ..................................................................................................18

## TABLE OF AUTHORITIES

Cases

*Amchem Products, Inc. v. Windsor*,
  521 U.S. 591 (1997).................................................................................................. 13

*Barrentine v. Arkansas-Best Freight Sys., Inc.*,
  450 U.S. 728 (1981).................................................................................................. 11

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) ...................................................................................... 6

*D'Amato v. Deutsche Bank,*
  236 F.3d 78 (2d Cir. 2001) ........................................................................................ 7

*Frank v. Eastman Kodak Co.*,
  228 F.R.D. 174 (W.D.N.Y. 2005)..................................................................... passim

*Gilliam v. Addicts Rehabilitation Center Fund*,
  No. 05 CV 3452 (RLE), 2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) ................... 11

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43, 48 (2d Cir. 2000) ................................................................................... 6

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ................................................................................. 13

*Hansberry v. Lee*,
  311 U.S. 32 (1940).................................................................................................... 15

*In re Austria & German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y 2000) ...................................................................... 8, 12

*In re Currency Conversion Fee Antitrust Litig.*,
  263 F.R.D. 110 (S.D.N.Y. 2009) ................................................................................ 7

*In re Drexel Burnham Lambert Group, Inc.*,
  960 F.2d 285 (2d Cir. 1992) ............................................................................... 14, 15

*In re Initial Public Offering Sec. Litig.*,
  671 F. Supp. 2d ................................................................................................ 8, 9, 10

*In re PaineWebber Ltd. P'ships Litig.*,
  147 F.3d 132 (2d Cir. 1998) ...................................................................................... 6

*In re Prudential Sec. Inc. Ltd P'ships Litig.*,
  163 F.R.D. 200 (S.D.N.Y. 1995) ............................................................................... 6

*Khait v. Whirlpool Corp.*,
  No. 06 Civ. 6381, 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) ............................. 7

*Mendez v. Radec Corp.*,
  232 F.R.D. 78 (W.D.N.Y. 2005)............................................................................... 15

*Mendez v. The Radec Corp.*,
   260 F.R.D. 38 (W.D.N.Y. 2009).................................................................................... 15

*Newman v. Stein,*
   464 F.2d 689 (2d Cir. 1972) ....................................................................................... 15

*Plummer v. Chemical Bank,*1795
   668 F.2d 654 (2d Cir. 1982) ......................................................................................... 8

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,*
   396 F.3d 96 (2d Cir. 2005) ................................................................................ 6, 7, 11

*Wright v. Stern*,
   553 F. Supp. 2d 337 (S.D.N.Y. 2008) .......................................................................... 7

Rules

Fed. R. Civ. P. 23........................................................................................... 13, 17, 18

Federal Rule of Civil Procedure 23(e) ............................................................................ 4

Rule 23(a)....................................................................................................... 13, 14, 15

Rule 23(a)(1) ........................................................................................................... 14

Rule 23(a)(2) ...................................................................................................... 14, 18

Rule 23(a)(3) ........................................................................................................... 14

Rule 23(a)(4) .................................................................................................. 15, 16, 20

Rule 23(b) ................................................................................................................ 13

Rule 23(b)(3)...................................................................................................... passim

Other Authorities

4 ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS § 11:41, at 87) (4th ed.
   2002) .......................................................................................................................... 6

7A Wright, Miller & Kane, *Fed. Practice & Proc.* § 1777 (2d ed. 1986).................................... 13

**INTRODUCTION**

Plaintiffs Zenaida Acevedo, Kelsie Reed, Joanna Dwyer and Colleen Pitts submit this Memorandum of Law and accompanying declaration of Michael J. Lingle sworn to April 29, 2016 ("Lingle Decl.") in support of the Motion for Final Approval of the Settlement ("Motion for Final Approval").

Pursuant to the Joint Stipulation of Settlement and Release ("Settlement Agreement,"), *see* Docket No. 75-2, the parties request that a Final Order and Judgment be entered by this Court. As set forth in the submissions supporting the Joint Motion for Preliminary Approval, the settlement is fair, reasonable, and adequate within the meaning of Federal Rule of Civil Procedure 23(e), and thus, for the same reasons, should be granted final approval. *See* Docket Nos. 75, 80.

Following entry of the Court's Order granting preliminary approval, notice of the settlement was sent to all Class Members. *See* Lingle Decl., Exhibit A (Declaration of Matthew McDermott of Class Action Administration LLC ("McDermott Decl.")) ¶ 6. Thirty calendar days before the expiration of the Claim Period members of the Settlement Class who had not yet submitted a completed claim form were mailed a reminder postcard. McDermott Decl. ¶ 6. The deadline for submitting claim forms and objections passed, and the class has responded favorably to the settlement. As of this date, 251 Class Members have submitted and had their settlement claims approved. McDermott Decl. ¶ 15. Further, only 12 Class members have opted out of the settlement. McDermott Decl. ¶ 12. Notably, no Class Members objected to the settlement. McDermott Decl. ¶ 10.

The proposed settlement easily satisfies the Second Circuit's standards for settlement approval. Class Counsel (who are highly experienced in handling overtime class actions) have

1

conducted sufficient discovery to enable them to evaluate the claims and defenses in the action.   Further, the parties reached this Settlement Agreement after extensive arms-length negotiations with the assistance of an experienced mediator.

This Court should grant the Motion for Final Approval in its entirety.

RELEVANT FACTUAL BACKGROUND

*Negotiations and Settlement*

While discovery was ongoing, pursuant to the Western District of New York's ADR program, the parties agreed to engage Paul L. LeClair, Esq. to mediate negotiations for an amicable resolution to this action.  Lingle Aff. ¶ 2.  Prior to mediation, the parties exchanged a significant amount of data including time and payroll records.  *Id*. at ¶ 3. The parties held two mediation sessions with Mr. LeClair on March 24, 2015 and April 2, 2015.  *Id*. Although the parties were initially unable to reach a settlement, additional settlement discussions between the parties resulted in a settlement as set forth in the parties' Joint Stipulation of Settlement and Release.  *Id*. at ¶ 4.

*The Court Preliminarily Approved the Settlement Agreement*

On November 24, 2015, the parties submitted their motion for Preliminary Approval of the Settlement.  *See* Docket No. 75.  Following oral argument on January 5, 2016, the Court granted the parties' motion for an order preliminarily approving the settlement, provisionally approving the settlement, approving the notice to class members, directing the distribution of such materials to class members, and setting a hearing for final approval.  *See* Docket No. 80.  The Court determined that the settlement falls "within the range of possible final settlement approval" and "is the result of extensive, arm's length negotiations by experienced counsel."  *Id.* at 4.   Further, the Court found that "[t]he assistance of an

2

experienced mediator in reaching the proposed settlement reinforces its non-collusive nature." *Id.*

### *Settlement Amount*

The Settlement Agreement preliminarily approved by the Court provides that defendants will pay a maximum of $2,100,000 to: (1) compensate participating Class Members for back pay and liquidated/statutory damages under the applicable law; (2) pay attorneys' fees and costs approved by the Court; (3) service payments to the Named Plaintiffs of $15,000 each; (4) a payment of $30,000 to Plaintiff Tracy Slocum; and (5) pay the reasonable costs of settlement administration, which is $27,500.

### *Plan of Allocation*

Payments to Class Members will be made from the "Net Settlement Amount," which is equal to the Settlement Amount less the other payments, outlined above, to be made under the Settlement Agreement. *Id.* at ¶ 14(f). Each Class Member who returns a claim form, and the Named Plaintiffs, will be entitled to a proportional share of the Net Settlement Amount, generally referred to as "Qualified Claimants." *Id.*

Qualified Claimants are divided into two subclasses based on the position(s) that they held with Defendants, defined as follows:

> "**Subclass A**" is defined as those members of the Settlement Class who worked as a staffing employee and/or on a temporary or per diem basis anytime during the period May 2, 2008 through preliminary approval of the settlement by the Court (staffers), for those weeks in which such employees performed work for or on behalf of Defendants.

> "**Subclass B**" is defined as all other members of the Settlement Class (clinical and other). Subclass B includes any members of Subclass A who also worked as permanent employees for Defendants, for such workweeks in which they were classified as permanent.

3

The claim value for each Qualified Claimant is based on: (1) the number of weeks, from May 2, 2008 through January 14, 2016, that each Qualified Claimant worked for Defendants and (2) the subclass to which each Qualified Claimant belongs.    A Qualified Claimant's workweek count is calculated by dividing the days between the employee's first and last dates during the class period by seven and rounding to the nearest integer; *provided*, *however*, any workweeks of a Qualified Claimant within Subclass A shall be further divided by four, which accounts for the relative assessment of damages between the two subclasses.  *Id.* Each Qualified Claimant is entitled to his or her individual workweek count, divided by the total workweeks for all Class Members, times the amount of the Net Settlement Amount.  *Id.*

To the extent there are any remaining funds after distribution, they will revert to Defendants.

### *Release of Claims*

Under the terms of the Settlement Agreement, any Class Member who did not timely and properly request exclusion releases his or her federal and state wage and hour claims, including the failure to pay overtime and the failure to provide proper wage notices. Settlement Agreement ¶ 22.

All Class Members were notified about the release of their claims in the Notice Materials.  *See* Docket No. 75-2 at 18-32 (Notice of Proposed Settlement sent to Class Members).  The Notice Materials provided clear details as to how Class Members could elect to opt-out of the settlement and not release their claims by submitting an exclusion form.  *See id.* at 31. Class Members clearly understood this option as evidenced by the fact that 12 Class Members elected to opt-out of the settlement.  *See* McDermott Decl. at ¶ 12.

4

*Settlement Administration*

Pursuant to the Court's order preliminarily approving the settlement, the Claims Administrator mailed Class Notice to 1,184 Class Members on February 22, 2016. McDermott Decl. ¶ 6. Class Members who wished to opt out of the settlement were required to submit an exclusion form (Settlement Agreement at ¶ 29; Exhibit C to the Settlement Agreement). An Election to Opt-Out Form was timely if it was postmarked by April 22, 2016. McDermott Decl. ¶ 11.

Anyone submitting a timely Claim Form was eligible to receive a share of the settlement form based on the distribution discussed above. A Claim Form was timely if it was mailed to the Claims Administrator and postmarked by April 22, 2016. McDermott Decl. ¶ 14.

Further, anyone wanting to object to the settlement needed to submit a written objection by March 23, 2016. Settlement Agreement at ¶ 17.

Of the 1,184 Class Members who were sent notice, 251 timely and properly executed and returned a Claim Form. McDermott Decl. ¶¶ 6, 15.

Class Members who failed to submit timely and properly complete a Claim form or exclusion form by April 22, 2016 will be bound by the judgment, but will not share in the settlement fund. Settlement Agreement at ¶ 22.

Twelve Members elected to opt-out of the settlement and no objections were submitted. McDermott Decl. ¶¶ 12,10.

<u>ARGUMENT</u>

## I.   THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT

"'The compromise of complex litigation is encouraged by the courts and favored by public policy.'" *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 117 (2d Cir. 2005) (quoting 4 ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS § 11:41, at 87) (4th ed. 2002)). The Second Circuit is "mindful of the 'strong judicial policy in favor of settlements, particularly in the class action context." *Id.* (quoting *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998)). As such, class action lawsuits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation. *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184-85 (W.D.N.Y. 2005)). Therefore, courts should exercise their discretion to approve settlements "in recognition of the policy encouraging settlement of disputed claims." *In re Prudential Sec. Inc. Ltd P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995).

"A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" *Frank*, 228 F.R.D. at 184 (internal citation omitted). This presumption has been easily met in this case, where, as discussed more fully in the preliminary approval papers, the parties only reached the settlement after the exchange of a significant amount of information, extensive negotiations between the parties, and two mediations with the assistance of a third-party neutral.

Further, in evaluating the adequacy of a settlement agreement, courts within the Second Circuit look to nine factors first enunciated in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (*abrogated on other grounds by Goldberger v. Integrated Res., Inc.*,

6

209 F.3d 43, 48 (2d Cir. 2000)).[1]  In this case, the factors weigh heavily in favor of final settlement approval.

### A.    Complexity, Expense, and Likely Duration

The majority of class actions are, by their very nature, "inherently complex." *Frank*, 228 F.R.D. at 184-85 (finding a $75,000 wage-and-hour matter complex, noting that "the costs of continued litigation will be substantial and will quickly outweigh the recovery that could be achieved").  Moreover, FLSA actions, such as the present case, are complex and often are litigated for years.  As the Supreme Court has recognized, "FLSA claims typically involve complex mixed questions of fact and law . . . [and] must be resolved in light of volumes of legislative history and over four decades of legal interpretation and administrative rulings." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981).

Without a settlement, this case would be complex, expensive and any relief obtained on behalf the class would be many years removed.  For example, assuming no settlement had been reached, significant merits and damages discovery would be required prior to any trial in this matter.  Additionally, significant motion practice would likely have ensued concerning class and collective action certification.  After such motions were resolved, the parties would have next needed to prepare for and conduct a trial which would likely have lasted many weeks, given the nature of the claims involved in this case.  And, regardless of who prevailed at trial, appeals would likely have followed.  In short, ultimate resolution of Plaintiffs' claims

---

[1]    The factors include: (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the state of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

7

would be a long, arduous process requiring significant expenditures of time and money on behalf of both parties and the Court.

Thus, this factor weighs heavily in favor of the settlement.

**B.** **Reaction of the Class to the Settlement**

The reaction of the class to the settlement provides the Court with the on-the-ground view of the settlement and the opinion from those who matter the most – the class members themselves. "Indeed, the favorable reaction of the overwhelming majority of class members to the Settlement is perhaps the most significant factor in our *Grinnell* inquiry." *Wal-Mart Stores,* 396 F.3d at 119.

A low percentage of class members opting out or submitting objections therefore provides substantial weight in favor of approving a settlement. *See D'Amato v. Deutsche Bank,* 236 F.3d 78, 86-87 *(*2d Cir. 2001) ("The District Court properly concluded that this small number of objections weighed in favor of the settlement."); *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 WL 2025106, at *5 (E.D.N.Y. Jan. 20, 2010) (favorable response that no class members objected and only two opted out of settlement demonstrated favorable response weighing in favor of final approval); *Wright v. Stern*, 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008) ("[t]he fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness); *In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 123 (S.D.N.Y. 2009); *In re Initial Public Offering Sec. Litig.*, 671 F. Supp. 2d at 485 ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.") (citations and quotation omitted).

Here, there has been a very positive reaction toward the settlement. Indeed, there is no doubt in this case that the class members support the settlement. No Class Members

8

objected and only 12 Class Members opted out. It would be difficult to fathom a more positive reaction from the class.

### C.   Stage of Proceedings and Amount of Discovery

"[A] sufficient factual investigation must have been conducted to afford the Court the opportunity to intelligently make an appraisal of the Settlement." *Frank*, 228 F.R.D. at 185 (citing *Plummer v. Chemical Bank*, 668 F.2d 654, 660 (2d Cir. 1982)); *see also In re Austria & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y 2000). The purpose of this is to ensure that "the parties have a thorough understanding of their case prior to settlement." *In re Initial Public Offering Sec. Litig.*, 671 F. Supp. 2d at 481 (citation omitted).

As previously discussed, the procedural history in this case leaves no doubt that the parties have sufficient information to thoroughly understand their respective positions, including their strengths and weaknesses. Setting aside the discovery exchanged during the litigation, the parties also participated in two mediations where a significant amount of data, including time and payroll records were exchanged. As a result, the parties were certainly in a position to assess any settlement in this matter.

### D.   Risks of Establishing Liability and Damages, and of Maintaining the Class Through Trial

The risks of establishing liability and damages, and of maintaining the class through trial, also weigh in favor of approval. In examining these factors, the Court need not "decide the merits of the case or resolve unsettled legal questions," but instead should "weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *Frank*, 228 F.R.D. at 185-86 (citation omitted).

Here, although Plaintiffs may be convinced of the strength of their case, Defendants are equally certain that their defenses will prevent recovery. For example, the parties

vigorously contested conditional certification of this case. Although Plaintiffs prevailed, if litigation were to continue, Defendants would very likely attempt to decertify the class using the evidence obtained in discovery. *See In re Initial Public Offering Sec. Litig.*, 671 F. Supp. 2d at 482 ("Plaintiffs inform the Court that defendants have compromised on several issues that defendants had previously argued would make these class actions unmanageable if they went to trial. In addition, decertification is always a likely possibility during trial in complex class actions such as these.") (footnote omitted); *Frank*, 228 F.R.D. at 186 ("If settlement were disapproved, it is likely that [defendant] would challenge the class certification. While plaintiffs might indeed prevail, the risk that the case might not be certified is not illusory and weighs in favor of the Class Settlement.").

Furthermore, a trial on the merits with respect to the allegations that Defendants did not pay overtime for all hours worked and failed to provide proper wage notice forms would involve risks to Plaintiffs because Defendants would vigorously defend the action. For example, Defendants contest the existence of the no overtime policy and that any employees were not paid properly or provided proper notice. The trial would have involved the examination of voluminous records and witnesses in order to establish liability. While Plaintiffs believe that they could ultimately establish such liability at trial, there is certainly risk involved.

Lastly, proving damages would also potentially pose a significant risk given the nature of Defendants' time and payroll records (including the lack of records), although plaintiffs believe their testimony would have proved the amount of time that they worked. While Plaintiffs believe that their claims are meritorious and damages are provable, Plaintiffs also acknowledge that the resolution of the liability and damages issues are uncertain. The

10

proposed settlement alleviates this uncertainty of these risks for both sides and weighs heavily in favor of settlement.

### E.       Defendants' Ability to Withstand a Greater Judgment Is Not Assured

Plaintiffs do not believe that Defendants could withstand a greater judgment.  Even if they could, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186.

Here, there is a substantial risk that even if Plaintiffs obtained a greater judgment, they would not be able to collect upon it.  For example, as evidenced by the parties' settlement agreement, Defendants have been funding the settlement with scheduled payments over the course of approximately eight months, most likely due to an inability to pay a lump sum all at once.  *See* Settlement Agreement at ¶ 14(g).  As this settlement structure ensures that Plaintiffs will be guaranteed payment despite any future financial uncertainties of the Defendants, this factor weighs in favor of approval.

### F.       The Range of Reasonableness of the Settlement in Light of the Best Possible Recovery and Attendant Risks of Litigation

The Second Circuit has held that a settlement that is within a "range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion" is appropriate.  *Wal-Mart Stores*, 396 F.3d at 119 (citing *Newman v. Stein,* 464 F.2d 689, 693 (2d Cir. 1972); *Gilliam v. Addicts Rehabilitation Center Fund*, No. 05 CV 3452 (RLE), 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008) ("[S]ettlement assures immediate payment of substantial amounts to class members, even if it means sacrificing speculative payment of a hypothetically larger amount years down the road.") (internal citation and quotation omitted).

11

Further, determining the "best possible recovery" remains a difficult and illusory goal and does not lend itself to a precise "mathematical equation yielding a particularized sum." *See In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178 (internal citation omitted).

Here, the Settlement Agreement providing for a guaranteed payment now for each Class Member outweighs the risk of continued litigation with a potential for little or possibly no recovery. As discussed above, the risks include having the collective action decertified, losing on the merits, or losing on appeal.

Each Class Member will receive a payment based upon their subclass (e.g., their position) and the number of weeks for which they were employed during the relevant limitations periods. Furthermore, Plaintiffs' counsel's investigation and analysis of the payroll records and wage theft claim accounts for the relative assessment of damages between the two subclasses. For example, as noted in the Defendants' opposition papers to Plaintiff's Motion for Conditional Certification, the temporary staffers who compose Subclass A typically worked twenty four hours each week and therefore these individuals infrequently worked overtime, making their damages significantly less. *See* Docket No. 26 at 28.

Each member of Subclass A (staffing employees) will receive an average net settlement payment (net of attorneys' fees and costs, incentive payments, the Slocum retaliation settlement, and claims administration costs) of approximately $743.72 while members of Subclass B will receive an average net settlement payment of $7,150.27. McDermott Decl. ¶ 16. Weighing the benefits of the settlement against the available evidence and risks associated with proceeding in the litigation, the settlement amount is a substantial recovery for Class Members.

II.    **CERTIFICATION OF THE RULE 23 SETTLEMENT CLASS SHOULD BE CONFIRMED**

As set forth in the parties' motion for preliminary approval, plaintiffs contend that the state law class, which the parties have proposed for settlement purposes only, meets all requirements of Fed. R. Civ. P. 23. Therefore, the Court should confirm its provisional certification of the settlement class pursuant to Rule 23.

A.    **The Prerequisites of Rule 23 Are Satisfied**

Certification of settlement classes is governed by Rule 23 of the Federal Rules of Civil Procedure, although the fact that certification takes place in the context of settlement is a factor to be considered. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 622 (1997). "To qualify for class certification, a putative class must satisfy the four requirements of Rule 23(a), as well as the requirements of one of the three subsections of Rule 23(b)." *Frank*, 228 F.R.D. at 174. Thus, the Court's threshold task is to determine, in accordance with Rule 23(a), whether the following prerequisites are satisfied: (1) Numerosity Requirement, (2) Commonality Requirement, (3) Typicality Requirement, and (4) Adequacy of Representation Requirement. *See* Fed. R. Civ. P. 23(a). Where, as here, the parties propose a settlement class pursuant to Rule 23(b)(3), the Court's next task is to determine whether common questions "predominate over any questions affecting only individual members" (the Predominance Requirement) and whether a "class action is superior to other available methods of adjudication of the controversy" (the Superiority Requirement). Fed. R. Civ. P. 23(b)(3); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (holding that a Rule 23(b)(3) settlement class is appropriate "whenever the actual interests of the parties can be served best by settling their differences in a single action.") (quoting 7A Wright, Miller & Kane, *Fed. Practice & Proc.* § 1777 (2d ed. 1986)).

13

Here, the Court has already determined that the "proposed class and subclasses meet all of the requirements for class certification under Rule 23(a) and (b)(3)." *Se*e Doc. No. 80 at 6. As all the requirements continue to be met, certification is appropriate.

### 1. Rule 23(a)(1): Numerosity Requirement

Given the total number of Rule 23 Class Members, plaintiffs maintain that joinder continues to be impracticable and the Numerosity Requirement is met. *See* Fed. R. Civ. P. 23(a)(1).

### 2. Rule 23(a)(2): Commonality Requirement

Rule 23(a)'s Commonality Requirement mandates that there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). As before, plaintiffs contend that several common questions of fact and law exist, including whether Defendants had a policy of not paying Class Members overtime; whether Class Members worked in excess of 40 hours a week; whether Defendants had a policy and practice of not paying Class Members for all hours worked; and whether Defendants failed to provide adequate wage notices as required by the NYLL.

These issues satisfy commonality for purposes of Fed. R. Civ. P. 23(a)(2).

### 3. Rule 23(a)(3): Typicality Requirement

Rule 23's Typicality Requirement provides that the claims or defenses of the representative parties must be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The representative party has demonstrated typicality when 'each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Frank*, 228 F.R.D. at 182 (quoting *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)).

14

In the present litigation, the representative plaintiffs' state law claims arise out of the same type of factual and legal circumstances surrounding the claims of each class member. For example, all of the named plaintiffs contend that they were not paid overtime for hours worked over 40 in a week and were not provided sufficient Wage Theft Prevention Act notices—the same claim made on behalf of all the class members.  In addition, the fact that named plaintiffs may have had different job titles than other class members is irrelevant in terms of the typicality and commonality criteria.  *See Mendez v. Radec Corp.*, 232 F.R.D. 78, 92 (W.D.N.Y. 2005) *adhered to sub nom*. *Mendez v. The Radec Corp.*, 260 F.R.D. 38 (W.D.N.Y. 2009).  As such, the typicality requirement of Rule 23(a)(3) is satisfied.

### 4.    Rule 23(a)(4):  Adequacy of Representation Requirement

Rule 23(a)'s Adequacy of Representation Requirement provides that the representative parties fairly and adequately protect the interests of the class.  *See* Fed. R. Civ. P. 23(a)(4).  This requirement is grounded in due process concerns, as class members are constitutionally entitled to adequate representation before an entry of a judgment that binds them.  *See Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940).  To determine whether putative class members have received adequate representation, this Court must consider:  (1) whether "class counsel is 'qualified, experienced and generally able to conduct the litigation," and (2) whether class members have "antagonistic" interests.  *See Frank*, 228 F.R.D. at 182 (quoting *Drexel Burnham Lambert*, 960 F.2d at 291).

Here, Thomas & Solomon LLP ("T&S") and Klafehn Heise & Johnson PLLC ("KH&J") are qualified and able to litigate the claims in this matter.  *See* Lingle Decl. ¶¶ 7-11. T&S and KH&J have litigated the class claims in this lawsuit to date. Lingle Decl. ¶ 8. T&S concentrates its practice in employment litigation, and its attorneys are experienced in class

15

action litigation, including class actions arising under federal and state wage and hour laws. Lingle Decl. ¶ 9.

Additionally, as explained to the Court by Kevin G. Johnson, Esq. of KH&J at the preliminary approval hearing, Mr. Johnson has substantial experience in handling wage and hour class action litigation. *See* Lingle Decl. ¶ 10. Mr. Johnson is a former associate of T&S and handled numerous class actions that were similar in nature to the present case while with T&S. *Id.* Mr. Johnson was significantly involved in identifying the claims in this case and working with T&S to litigate and resolve this matter. *Id.*

T&S and KH&J have committed, and will continue to commit, the resources necessary to litigate and resolve these claims. Lingle Decl. ¶ 11.

Lastly, as detailed above, plaintiffs contend that they possess the same type of interests and suffered the same type of injury as the other proposed Class Members. Therefore, the parties submit that the adequacy requirement of Rule 23(a)(4) is satisfied for purposes of certification of a settlement class.

### 5.    Rule 23(b)(3): Predominance Requirement

Rule 23(b)(3)'s Predominance Requirement is "designed to determine whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Frank,* 228 F.R.D. at 183. It is satisfied if common questions can be resolved for all members of the class in a single adjudication. *Id.*

Defendants' alleged liability on the state law claims centers around their alleged policies of not paying Class Members overtime and failing to provide Class Members with proper wage notices. As detailed above, the class representatives contend that the resolution of this claim involves a number of common issues. For example, the class representatives

16

contend that they and the Class Members were all subject to defendants' no overtime policy as demonstrated by Defendants' own documents and records showing that Defendants did not pay overtime for hours worked over 40 in a week but instead provided Class Members with compensatory time, if anything.  The class representatives also allege Class Members were not provided with wage notices or were provided improper wage notices which did not properly indicate an overtime rate in violation of NYLL.  The legality of such policies can be determined once for all Class Members.

Because resolution of those common issues significantly resolves this litigation, they therefore predominate over any potential individualized issues. As a result, the common factual and legal issues raised by the allegations predominate over any potential individualized issues.

### 6.   Rule 23(b)(3):  Superiority Requirement

Rule 23(b)(3)'s Superiority Requirement mandates that "the class action be superior to other methods of adjudication." *Frank*, 228 F.R.D. at 183.  Where a class is being certified for settlement purposes, three factors are pertinent to this determination:

> (a) The interest of members of the class in individually controlling the prosecution ... of separate actions;
>
> (b) The extent and nature of any litigation concerning the controversy already commenced by ... members of the class;
>
> (c) The desirability ... of concentrating the litigation ... in the particular forum.

*Id.* (quoting Fed. R. Civ. P. 23(b)(3)).

Here, the Superiority Requirement is satisfied because there is no indication that class members seek to individually control their cases, particularly given that only twelve Class Members opted out of the settlement, and there is no reason that this forum is undesirable.

17

Accordingly, the parties contend that certification of settlement classes is superior to any other method of resolving this matter, as it will promote economy, expediency, and efficiency.

## CONCLUSION

For the foregoing reasons, the parties respectfully request that the Court grant the joint motion for final approval of the settlement.

Dated:  April 29, 2016

**THOMAS & SOLOMON LLP**

/s/ Michael J. Lingle
Michael J. Lingle, Esq.
Sarah E. Cressman, Esq.
Jonathan W. Ferris, Esq.
693 East Avenue
Rochester, NY 14607
Telephone:  (585) 272-0540
Facsimile:  (585) 272-0574
mlingle@theemploymentattorneys.com
scressman@theemploymentattorneys.com
jferris@theemploymentattorneys.com

**KLAFEHN HEISE & JOHNSON PLLC**
Kevin G. Johnson, Esq.
109 Main Street
Brockport, New York 14420
Telephone:  (585) 431-2074
Facsimile:  (585) 637-7546
kjohnson@khjlaw.com

*Attorneys for Plaintiffs*

18