UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



_____

ZENAIDA ACEVEDO, KELSIE REED,
JOANNA DWYER, and COLLEEN PITTS, on
behalf of themselves and all other employees
similarly situated,

                Plaintiffs,

       v.

WORKFIT MEDICAL LLC, WORKFIT
STAFFING LLC, DELPHI HEALTHCARE
PLLC, DELPHI HOSPITALIST SERVICES
LLC, and C. JAY ELLIE, JR., M.D.,

             Defendants.

_____

TRACY SLOCUM,

             Plaintiff,

       v.

WORKFIT MEDICAL LLC, C. JAY ELLIE,
JR., M.D., and BRIAN BANAS,

             Defendants.

_____

**DECISION AND ORDER**

6:14-CV-06221 EAW

6:15-CV-06186 EAW

## INTRODUCTION

    Plaintiffs Zenaida Acevedo, Kelsie Reed, Joanna Dwyer, and Colleen Pitts
(collectively the "Named Plaintiffs") commenced case number 6:14-cv-06221 EAW on
May 2, 2014, seeking injunctive and declaratory relief and monetary damages on behalf
of themselves and all other similarly situated employees and former employees of

- 1 -

Defendants WorkFit Medical, LLC, WorkFit Staffing LLC, Delphi Healthcare PLLC, Delphi Hospitalist Services LLC, and Dr. C. Jay Ellie, Jr. (collectively "Defendants") and alleging violations of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201 *et seq.* (the "FLSA") and related state law claims. (Dkt. 1)[1]. Plaintiffs allege that Defendant failed to pay wages including statutorily required overtime to employees and that Defendants failed to provide employees with statutorily required wage notices. (*Id.* at ¶¶ 114, 118-121).

Plaintiff Tracy Slocum ("Slocum") commenced case number 6:15-cv-06186 EAW on May 2, 2015, alleging that Defendants WorkFit Medical, LLC, C. Jay Ellie, Jr., M.D., and Brian Banas had retaliated against her for her participation in case number 6:14-cv-06221.

Presently before the Court are the parties' Joint Motion for Final Approval of Settlement of case number 6:14-cv-6221 EAW (Dkt. 82) ("the Joint Approval Motion") and Plaintiffs' Motion for Attorneys' Fees and Costs, Enhancement Payments to Named Plaintiffs, and Individual Payment to Tracy Slocum (Dkt. 83) (the "Attorneys' Fees Motion"). Because the Court finds that the proposed settlement is fair, reasonable, and adequate, and that Plaintiffs' request for attorneys' fees, costs, enhancement payments, and individual payment to Plaintiff Slocum is fair and reasonable, the Court grants the Joint Approval Motion and the Attorneys' Fees Motion.

---

[1]     Unless otherwise noted, all references to docket entries in this Decision and Order refer to the docket in case number 6:14-cv-6221 EAW.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs claim that Defendants' hourly employees were subject to a "no overtime" policy pursuant to which employees who worked more than 40 hours in a workweek were not paid at time and a half their regular hourly rate for those hours worked but instead received compensatory time. (*Id.*). Plaintiffs claim that Defendants communicated this policy both verbally and in writing. (*Id.*). Plaintiffs contend that this policy violated both the FLSA and New York State law, as well as the terms of written and oral employment contracts they allegedly entered into with Defendants. (*Id.*).

On May 23, 2014, Plaintiffs moved for an order certifying an FLSA collective class and providing for expedited notice to class members. (Dkt. 14). On September 17, 2014, the Court entered an order granting Plaintiffs' motion. (Dkt. 36).[2]

The parties held multiple mediation sessions between April 2, 2015, and May 11, 2015, with mediator Paul L. Leclair, Esq. (Dkt. 73). The mediation sessions resulted in the parties entering into a settlement agreement in November 2015 (the "Settlement Agreement").

The Settlement Agreement creates a fund of $2,100,000 to settle both of the above-captioned cases, and prescribes the method of allocating that settlement fund among the various putative class and collective action members. (Dkt. 76 at ¶ 11). The settlement fund covers class members' awards, enhancement payments, the individual

---

[2]    The Court's September 17th Decision and Order also granted in part and denied in part Defendants' motion to dismiss certain of Plaintiffs' claims. (*See* Dkts. 24, 36).

payment to Plaintiff Slocum, expenses and costs, interest, attorneys' fees, and the costs of administration of the settlement and claims process. (*Id.*)

The Settlement Agreement selects Class Action Administration, Inc., as the Claims Administrator. (*Id.* at ¶ 14(e). The Settlement Agreement provides that class members who timely return a claim form will be paid according to a calculation that takes into account the number of weeks the class member was employed by Defendants. (*Id.* at ¶ 14(f)). The Settlement Agreement also provides for payment of up to 33 and 1/3 percent of the Settlement Amount in attorneys' fees, and a payment of up to $15,000 for actual litigation costs and reasonable expenses. These payments are to be made from the settlement fund. (*Id.* at ¶ 14(a)).

The parties jointly moved for preliminary approval of the settlement agreement, for preliminary certification of the Settlement Class, for conditional appointment of Plaintiffs' counsel as class counsel, for approval of Class Action Administration, Inc. as claims administrator, and for approval of the parties' proposed notice to the class. (Dkt. 75). The Court held a preliminary fairness hearing on January 5, 2016. (Dkt. 78). At the preliminary fairness hearing, the Court and the parties discussed numerous aspects of the proposed settlement and the proposed notice to the settlement classes. The parties submitted revised proposed notice materials on January 8, 2016. (Dkt. 79).

The Court entered a Decision and Order on January 14, 2016, that preliminarily certified one class (the "Settlement Class") and two subclasses ("Subclass A" and "Subclass B"), preliminarily approved the Settlement Agreement, preliminarily approved

Plaintiffs' counsel as class counsel for the Settlement Classes, approved the parties' proposed class notice and method of distributing the same, adopted the settlement approval process set forth in the Settlement Agreement, and set a final fairness hearing for Thursday, April 14, 2016. (Dkt. 80). The final fairness hearing was subsequently adjourned to May 3, 2016.

Plaintiffs filed the Joint Approval Motion on April 29, 2016, and the Attorneys' Fees Motion on May 2, 2016. (Dkt. 82, 83). A final fairness hearing was held on May 3, 2016. (Dkt. 84). No class members appeared at the final fairness hearing, nor did any class members submit objections to the Settlement Agreement in advance of the final fairness hearing.

## DISCUSSION

I. **The Joint Approval Motion**

A. **Legal Standard**

"Under Federal Rule of Civil Procedure 23, a class action cannot be settled without the approval of the District Court. The District Court must carefully scrutinize the settlement to ensure its fairness, adequacy and reasonableness, and that it was not a product of collusion." *D'Amato v. Deutsche Bank,* 236 F.3d 78, 85 (2d Cir. 2001) (citations omitted). FLSA settlements also require court approval. *See Misiewicz v. D'Onofrio Gen. Contractors Corp,* No. 08 CV 4377(KAM)(CCP), 2010 WL 2545439, at *3 (E.D.N.Y. May 17, 2010) ("Stipulated settlements in a FLSA case must be approved by the Court. . . .").

Approval of a proposed class action settlement is a matter of discretion for the trial court. *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995). A proposed settlement should be approved if the court determines "that the settlement, taken as a whole, is fair, reasonable, and adequate." *Id.* The court must give "proper deference to the private consensual decision of the parties" in exercising its discretion. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

"A court determines a settlement's fairness by looking at both the settlement's terms and the negotiating process leading to settlement." *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 176 (W.D.N.Y. 2011) (quotation omitted). Assessing procedural fairness requires the court to review the negotiating process and "ensure that the settlement resulted from arm's length negotiations and that plaintiffs' counsel . . . possessed the [necessary] experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests." *Id.* (quotation omitted).

Assessing substantive fairness requires the Court to consider nine specific factors (the "*Grinnell* factors"):

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*McReynolds v. Richards-Cantave*, 588 F.3d 790, 804 (2d Cir. 2009) (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)).

## B.    Certification of the Settlement Class and Subclasses

In order to approve the Settlement Agreement, the Court must first grant final certification of the parties' proposed Settlement Class and the subclasses. These classes are defined as follows:

> [T]he "Settlement Class shall consist of all "Class Members" who fail to opt out of this Stipulation of Settlement. "Class Members" are defined as follows:
>
> Zenaida Acevedo, Kelsie Reed, Joanna Dwyer and Colleen Pitts and all other current or former employees of Defendants who worked on an hourly basis anytime during the period May 2, 2008 through preliminary approval of the settlement by the Court. . . .
>
> The Settlement Class shall be divided between the following two subclasses:
>
> "Subclass A" is defined as those members of the Settlement Class who worked as a staffing employee and/or on a temporary or per diem basis anytime during the period May 2, 2008 through preliminary approval of the settlement by the Court (staffers), for those weeks in which such employees performed work for or on behalf of Defendants.
>
> "Subclass B" is defined as all other members of the Settlement Class (clinical and other). Subclass B includes any members of Subclass A who also worked as permanent employees for Defendants, for such workweeks in which they were classified as permanent.

(Dkt. 76 at ¶ 4).

Certification of a class for settlement purposes is appropriate "where the proposed class and class representative satisfy the four requirements of Federal Rule of Civil Procedure 23(a) — numerosity, commonality, typicality, and adequacy — as well as one of the three subsections of Rule 23(b)." *Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 157-58 (E.D.N.Y. 2009). "In deciding certification, 'courts must take a liberal rather than restrictive approach in determining whether the plaintiff satisfies these requirements and may exercise broad discretion in weighing the propriety of a putative class.'" *Id.* at 158 (quoting *Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 72 (E.D.N.Y. 2004)).

The Court certifies the Settlement Class, including Subclass A and Subclass B, as those terms are defined in paragraph 4 of the Settlement Agreement, for the reasons set forth in detail in its Decision and Order entered January 14, 2016 (Dkt. 80), and reiterated below. The proposed class and subclass meet all the requirements for class certification under Rule 23(a) and (b)(3).

### 1.    Numerosity

With regard to numerosity, this element is satisfied if the class is sufficiently numerous that joinder is "impracticable." *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993). Here, the Settlement Class has approximately 900 members and the proposed Subclasses contain roughly 700 members and 200 members, respectively. The Settlement Class and Subclasses A and B therefore satisfy the first element because

numerosity is presumed at a level of 40 members. *Consol. Rail. Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

### 2.    Commonality

The proposed Settlement Class and Subclasses also satisfy the commonality requirement.  Commonality occurs where "[the] class members' claims share a common question of law or fact." *Cohen*, 262 F.R.D. at 158.   The common issues of law and fact in this case center around Defendants' policies regarding overtime and whether Defendants failed to provide statutorily required wage notices.  Courts have not hesitated to find the commonality requirement met in comparable circumstances.  *See, e.g., Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 371 (S.D.N.Y. 2007) ("The complaint raises a number of questions of law and fact common to all members of the class, including, *inter alia*, factual questions regarding defendants' payroll practices, overtime policy, and compliance with minimum wage requirements, as well as legal questions concerning the applicability of the New York Labor Law and any exemptions.").

### 3.    Typicality

The Named Plaintiffs are also typical of the class members "because [the Named Plaintiffs'] claims arose from the same factual and legal circumstances that form the bases of the Class Members' claims." *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 616 (S.D.N.Y. 2012); *see also Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 182 (W.D.N.Y. 2005) (finding typicality because "[plaintiff's] claims arise from the same

course of events as those raised by all other class members – that is, all class members, including [plaintiff], allege that [defendant] failed to pay them . . . overtime wages for hours worked in excess of forty per week during the relevant time period"). The typicality requirement has therefore been met in this case.

### 4. Adequacy

The Named Plaintiffs satisfy the adequacy requirement. The adequacy requirement has two elements: "(1) the representative plaintiff's attorneys must be qualified, experienced, and generally able to conduct the litigation, and (2) the plaintiff's interests must not be antagonistic to those of the remainder of the class." *Cohen*, 262 F.R.D. at 158. Here, none of the Named Plaintiffs have a conflict that would defeat their representative status, and Plaintiffs' counsel is experienced and competent.

### 5. Rule 23(b)(3)

The Settlement Class and Subclasses A and B also satisfy Rule 23(b)(3) because the Court finds "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002).

Here, resolution of the common issues of fact and law previously identified would permit significant resolution of this matter. For example, the existence of a policy of providing employees with compensatory time rather than paying overtime wages is a common issue that could be resolved once for all class members. The superiority requirement is met here because the commencement of individual actions would be cost-prohibitive (because the potential recovery is far outweighed by the potential cost) and because the majority of Defendants' work locations are located in this District, making this a desirable forum. Moreover, the common issues of law and fact in this matter are more substantial than the individualized issues. Additionally, even the individualized issues (e.g. how many hours a particular employee worked in particular weeks) are likely to implicate the same kinds of proof (e.g. the payroll records kept by Defendant). Under these circumstances, Rule 23(b)(3) is satisfied.

The parties have demonstrated that the requirements of Federal Rule of Civil Procedure 23(a) and (b) are met in this case. The Court therefore affirms as final its certification of the Settlement Class and Subclasses A and B for the purpose of settlement. *See Frank*, 228 F.R.D. at 184.

## C.   The Settlement Agreement is Fair, Reasonable, and Adequate

The Court has carefully considered the parties' submissions and the information provided at both the preliminary approval hearing and the final fairness hearing and finds that the Settlement Agreement is fair, reasonable, and adequate.

With respect to procedural fairness, "there is no indication that the settlement agreement is the product of anything other than arm's-length negotiations," *Davis*, 827 F. Supp. 2d at 177, and in fact, the Settlement Agreement is the product of multiple mediation sessions with a court-approved mediator. *See Morris*, 859 F. Supp. 2d at 618 (involvement of an experienced mediator is "a strong indicator of procedural fairness"). In addition, the parties are represented by experienced counsel and counsel for both sides have represented to the court that the Settlement Agreement was the product of extensive negotiations. Therefore, the Court concludes that the Settlement Agreement is fair from a procedural standpoint. *See In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 160 (S.D.N.Y. 2011) (finding procedural fairness in part because parties were represented by experienced counsel and there was evidence of arm's-length negotiations).

With respect to substantive fairness, consideration of the *Grinnell* factors leads to the conclusion that the Settlement Agreement should be approved.   This case is moderately complex, involving both federal claims and state law claims, and a trial in this matter would likely be lengthy, costly, and complicated. *See Morris*, 859 F. Supp. 2d at 619 (trial of case involving FLSA and NYLL claims was likely to be lengthy and complicated); *Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 56 (E.D.N.Y. 2010) (same); *see also Frank,* 228 F.R.D. at 185 ("Although this case is less complex than many, the costs of continued litigation will be substantial and will quickly outweigh the recovery that could be achieved.").

The reaction of the class to the Settlement Agreement has been favorable. Two hundred and fifty-one individuals (approximately twenty-one percent of eligible class members) have opted in to the settlement, while only twelve individuals have opted out. (Dkt. 82-3 at ¶¶ 12, 15). This is a high participation rate for a "claims made"[3] settlement agreement such as the one in this case. *See, e.g., Sylvester v. CIGNA Corp.,* 369 F. Supp. 2d 34, 52 (D. Me. 2005) ("'[C]laims made' settlements regularly yield response rates of 10 percent or less."). Additionally, no class members have objected to the Settlement Agreement. (Dkt. 82-3 at ¶ 10). *See Davis,* 827 F. Supp. 2d at 177 (class reaction favorable where only eleven members opted out and only three objected); *Alleyne,* 264 F.R.D. at 56 (class reaction favorable where less than 1% of class objected and only seven class members opted out).

With respect to the stage of the proceedings and the amount of discovery that has occurred, "a sufficient factual investigation must have been conducted to afford the Court the opportunity to intelligently make an appraisal of the Settlement." *Frank,* 228 F.R.D. at 185 (quotation omitted). Here, the parties have represented to the Court that they "exchanged a significant amount of data, including time and payroll records." (Dkt. 82-1 at 14). "Thus, while this case is still in the relatively early stages of discovery, the information exchanged . . . has been sufficient to determine the unpaid overtime compensation due to each plaintiff." *Frank,* 228 F.R.D. at 185 (parties had exchanged

---

[3]   A "claims made" settlement agreement is one in which the defendant agrees to pay a monetary settlement award to qualifying class members who mail in a claim for a payment.

information regarding identities of potential class members, the hours they worked, and the relevant rates of pay).  This factor favors approval of the Settlement Agreement.

"In considering the risks of establishing liability and damages, and of maintaining the class action through the trial, it is important to keep in mind that this Court's role is not to 'decide the merits of the case or resolve unsettled legal questions.'" *Davis*, 827 F. Supp. 2d at 177 (quoting *Carson v. American Brands, Inc.*, 450 U.S. 79, 88 n. 14 (1981)).  Instead, "'the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement.'" *Id.* at 177-78 (quoting *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004)).

This is a vigorously contested case.  Although the Court need not "scrutinize the merits of the parties' positions, . . . it is fair to say that there would have been an uncertain outcome, and significant risk on both sides, had this case gone to trial." *Id.* at 178.   Indeed, there has already been motion practice in this matter regarding the appropriateness of class certification, and it is likely that Defendants would have attempted to decertify the class.  The fourth, fifth, and sixth *Grinnell* factors therefore favor approval of the Settlement Agreement.

The seventh *Grinnell* factor (the ability of the defendants to withstand a greater judgment) strongly favors approval of the Settlement Agreement.   The parties have represented to the Court that the Defendant's financial position played a role in reaching settlement.   Indeed, Defendants have funded the settlement with scheduled payments over the course of eight months, rather than making a lump sum payment.   Moreover,

even if Defendant was able to withstand a greater judgment, a "defendant['s] ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186 (quotation and citation omitted).

With respect to the eighth and ninth *Grinnell* factors (the range of reasonableness of the settlement fund in light of the best possible recovery and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation), "the determination of whether a settlement amount is reasonable does not involve the use of a mathematical equation yielding a particularized sum." *Morris*, 859 F. Supp. 2d at 621 (quotation omitted). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Frank*, 228 F.R.D. at 186 (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). Here, Plaintiffs' counsel indicated to the Court that the highest estimate of potential damages in this case was somewhere in the range of $7 million to $9.1 million. Defendants, unsurprisingly, maintain that the potential recovery is much lower. In any event, a $2.1 million settlement is reasonable where the potential recovery is $9.1 million, especially when taking into consideration Defendants' financial position and the risks of litigation. *See Morris*, 859 F. Supp. 2d at 621 (approving settlement of $2.5 million over objection that best possible recovery was $125 million). The Settlement Agreement provides for meaningful recovery for class members and "balances the damages potentially recoverable by the plaintiffs with the genuine risks of

continued litigation." *Frank*, 228 F.R.D. at 186-87.  The average payment to members of Subclass A is approximately $743.42 and the average payment to members of Subclass B is approximately $7,150.27.  These are significant sums of money, especially when balanced against the costs and risks associated with trial.

Based on the foregoing, the Court finds that the Settlement Agreement is the result of a procedurally fair process and that the *Grinnell* factors weigh in favor of approval. As a result, the Court finds that the Settlement Agreement is fair, reasonable, and adequate.

### D.   Appointment of Plaintiffs' Counsel as Class Counsel and of the Named Plaintiffs as Class Representatives

The Court previously preliminarily appointed Thomas & Solomon LLP and Klafehn Heise & Johnson PLLC as class counsel in its Decision and Order dated January 14, 2016.  (Dkt. 80 at 9).  The Court affirms its prior ruling that Thomas & Solomon LLP and Klafehn Heise & Johnson PLLC meet all the criteria of Federal Rule of Civil Procedure 23(g).  *See, e.g., Davis*, 775 F. Supp. 2d at 612 (approving Thomas & Solomon LLP as class counsel in large-scale wage action); *Frank,* 228 F.R.D. at 182 (same).

The Court also preliminarily found that the Named Plaintiffs were adequate class representatives for the Settlement Class.  (Dkt. 80 at 12).  The Court affirms that ruling for the reasons discussed in Part I(B) of this Decision and Order.

II.     **The Attorneys' Fees Motion**

Plaintiffs have also moved for an award of attorneys' fees, costs, enhancement awards to the named plaintiffs, and an individual payment of $30,000 to Plaintiff Slocum. (Dkt. 83).   In accordance with the Settlement Agreement, Defendant has not opposed these requests.   For the reasons set forth below, the Court grants Plaintiffs' Attorneys Fees Motion.

A.     **The Attorneys' Fees Request is Fair and Reasonable**

As with all aspects of the Settlement Agreement, the Court must carefully scrutinize the provisions providing for the payment of attorneys' fees, costs, and enhancement payments to ensure that they are fair and reasonable.   *See Davis*, 827 F. Supp. 2d at 183.   The standard can be summarized as follows:

> To determine what qualifies as a reasonable attorney's fee in the class action context, a district court may use either of two distinct methods.   The first is the lodestar-type methodology, under which the court reviews a fee application submitted by counsel to ascertain the number of hours reasonably billed to the class, and then multiplies that figure by an appropriate hourly rate.   Under the second and simpler approach, the court approves an award of a percentage of the class settlement fund to compensate counsel, with reference to the lodestar or presumptively reasonable fee calculation as a cross-check.   Regardless of whether the lodestar or percentage method is chosen, the Court's assessment of the reasonableness of the fee is guided by the same criteria: the time and labor expended by counsel; the magnitude and complexities of the litigation; the risk borne in the litigation; the quality of the representation; the requested fee in relation to the settlement; and public policy considerations.

*Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 58 (E.D.N.Y. 2010).

The trend in the Second Circuit has been towards using the percentage method for awarding fees in class action cases. *See Davis*, 827 F. Supp. 2d at 183-84 (collecting cases). Plaintiffs request that the Court use the percentage method in this case and award a fee of $700,000 – one-third of the total settlement fund. (Dkt. 83-1 at 8).

An award of one-third of the total settlement fund is not unreasonable on its face. *See Morris*, 859 F. Supp. 2d at 621 (a request for one-third of the settlement fund "is reasonable and 'consistent with the norms of class litigation in this circuit.'") (quoting *Gilliam v. Addicts Rehab. Center Fund*, No. 05 Civ. 3452(RLE), 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008)). Nevertheless, the Court must perform a lodestar cross-check and consider the additional factors set forth in *Alleyne*.

Plaintiffs' counsel has submitted for *in camera* review documentation regarding the hours expended by Plaintiffs' counsel and the rates charged. The documents submitted to the Court show that Plaintiffs' counsel expended just over 2,000 hours on this litigation. The documents submitted to the Court further indicate that at Thomas & Solomon LLP's standard hourly rates, the hourly fee for this litigation would be approximately $541,552.50.

"Where the lodestar method is used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court. Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case." *Davis*, 827 F. Supp. 2d at 184 (quotation and citation omitted). Moreover, it is not necessary for the Court to reach a conclusion as to the reasonableness of the standard

hourly rates charged by Thomas & Solomon LLP, and the Court specifically does not reach any such conclusion.

Here, the requested one-third fee is roughly 1.3 times the lodestar amount. This is well within the multiplier range that courts routinely find acceptable. *See id.* at 185 (approving fee with a multiplier of 5.3 and noting that "[c]ourts regularly award lodestar multipliers from two to six times lodestar") (quotation omitted). The lodestar cross-check supports approval of Plaintiffs' attorneys' fees request.

The other criteria that courts use in assessing the reasonableness of an attorneys' fees request (namely, the time and labor expended by counsel; the magnitude and complexities of the litigation; the risk borne in the litigation; the quality of the representation; the requested fee in relation to the settlement; and public policy considerations) also support approval of Plaintiffs' request. It is clear that Plaintiffs' counsel performed significant work on this matter. Although this litigation did not involve as many potential class members as some wage claim actions, it was moderately complex, involving federal law and state law, and required Plaintiffs' counsel to perform significant investigation. Plaintiffs' counsel took this matter on a contingency fee basis, and therefore ran the risk of recovering no fees at all. Plaintiffs' counsel advocated zealously on behalf of their clients and they have achieved a settlement result that will provide class members with meaningful relief. Finally, a request for one-third of the entire settlement fund is reasonable. *See Morris*, 859 F. Supp. 2d at 621; *see also Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007) ("The entire

[settlement fund], and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class. An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available, whether claimed or not.").

For the foregoing reasons, the Court awards Thomas & Solomon LLP $700,000.00 in attorneys' fees, to be paid from the settlement fund as set forth in the Settlement Agreement.

### B.    The Request for Costs is Fair and Reasonable

Plaintiffs' counsel also seeks $8,419.70 in litigation costs and $27,500.00 in administrative costs expended by Class Action Administration LLC (the "Claims Administrator"). "Courts typically allow counsel to recover their reasonable out-of-pocket expenses." *Morris*, 859 F. Supp. 2d at 624 (permitting reimbursement of "filing fees, telephone charges, postage, transportation, working meals, photocopies, and electronic research.").

Here, Plaintiffs' counsel has provided for *in camera* review a breakdown of the costs incurred in this litigation. Plaintiffs' counsel has affirmed to the Court under penalties of perjury that these costs were incurred by the firm. On their face, the costs do not appear unreasonable based on the Court's understanding that the costs were actually incurred. The Court therefore approves Plaintiffs' counsel's request for reimbursement of $8,419.70 in costs, to be paid from the settlement fund as set forth in the Settlement Agreement.

The Court has also reviewed *in camera* a cost estimate from the Claims Administrator regarding its administrative fees. The Claims Administrator has performed and will perform significant administrative duties with respect to the Settlement Agreement. In particular, the Claims Administrator was responsible for preparing, printing, and mailing the notice of the class and collective action settlement, was responsible for receiving and reviewing the claims forms submitted by claims members, and will be responsible for drafting and mailing settlement award checks to the class members.

Based on the information provided to the Court, the administrative costs are reasonable and fair. The Court therefore grants Plaintiffs' counsel's request for payment of the Claims Administrator's fee and awards $27,500.00 in administrative costs, to be paid from the settlement fund as set forth in the Settlement Agreement.

C.     **The Enhancement Awards are Fair and Reasonable**

Plaintiffs request the Court's approval of the enhancement awards set forth in the Settlement Agreement. These enhancement awards consist of $15,000 to each of the Named Plaintiffs. (Dkt. 83-1 at 8).

"Incentive awards are not uncommon in class action cases and are within the discretion of the court." *Frank*, 228 F.R.D. at 187. In particular, "service awards [to plaintiffs] are common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the

plaintiffs." *Morris*, 859 F. Supp. 2d at 624.   "The guiding standard in determining an incentive award is broadly stated as being the existence of special circumstances including the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claims, and, of course, the ultimate recovery." *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 200 (S.D.N.Y. 1997).   "[Incentive] awards are particularly appropriate in the employment context.   In employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers." *Frank*, 228 F.R.D. at 187.

Here, the enhancement awards provided for in the Settlement Agreement are reasonable and compensate Named Plaintiffs for the risk they undertook in attaching their name to this litigation and for the time and effort they expended in assisting with the prosecution of this action. (*See* Dkt. 81 at ¶¶ 2-15)   The enhancement payments amount to $60,000, or approximately three percent of the total settlement fund.   This amount is reasonable.   *See Frank*, 228 F.R.D. at 187-88 (approving enhancement award to class representative totaling 8.4% of the total settlement fund); *Chambery v. Tuxedo Junction Inc.*, No. 12-CV-06539 EAW, 2014 WL 3725157, at *11 (W.D.N.Y. July 25, 2014) (approving enhancement awards totaling roughly 5% of the total settlement fund).   The

Court therefore approves the enhancement awards as set forth in the Settlement Agreement.

### D.    The Individual Payment to Plaintiff Slocum is Fair and Reasonable

Finally, Plaintiffs request that the Court approve an individual payment of $30,000 to Plaintiff Slocum to be paid from the settlement fund.    (Dkt. 83-1 at 8).    In consideration for this payment and as part of the Settlement Agreement, Plaintiff Slocum has agreed to settle case number 6:15-cv-06186 EAW and to a broad release of her claims against Defendants, including "any alleged adverse employment action or disparate treatment during [her] employment . . . and/or [her] termination." (Dkt. 75-2 at ¶ 24).    Under these circumstances, an individual payment of $30,000 is fair and reasonable. *See Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2012 WL 381202, at *8 (N.D. Cal. Feb. 6, 2012) (approving award of $12,500 to named plaintiff in part because she gave defendant a release of all claims); *Wade v. Kroger Co.*, No. 3:01CV-699-R, 2008 WL 4999171, at *13 (W.D. Ky. Nov. 20, 2008) (approving payment of $30,000 to plaintiffs who executed a release "that is broader than the release given by other members of [the] class").    The Court therefore approves the individual payment to Plaintiff Slocum as set forth in the Settlement Agreement.

## CONCLUSION

By reason of the foregoing, it is hereby ordered as follows:

1.     The terms and conditions of the Settlement Agreement are hereby approved.  Capitalized terms used in this Decision and Order and not otherwise defined herein shall have the definitions assigned to them in the Settlement Agreement.

2.     The Court certifies the following class and subclasses for settlement purposes:

   a.     The "Settlement Class" shall include Plaintiffs Zenaida Acevedo, Kelsie Reed, Joanna Dwyer and Colleen Pitts and all other current or former employees of Defendants who worked on an hourly basis anytime during the period May 2, 2008, through preliminary approval of the settlement by the Court.

   b.     "Subclass A" is defined as those members of the Settlement Class who worked as a staffing employee and/or on a temporary or per diem basis anytime during the period May 2, 2008, through preliminary approval of the settlement by the Court (staffers), for those weeks in which such employees performed work for or on behalf of Defendants.

   c.     "Subclass B" is defined as all other members of the Settlement Class

(clinical and other).   Subclass B includes any members of Subclass A who also worked as permanent employees for Defendants, for such work weeks in which they were classified as permanent.

3.   The Court finds that the Named Plaintiffs Zenaida Acevedo, Kelsie Reed, Joanna Dwyer, and Colleen Pitts are adequate class representatives for the Settlement Class and Subclasses.

4.   Michael J. Lingle, Sarah E. Cressman, and Jonathan W. Ferris of the firm Thomas & Solomon, 693 East Avenue, Rochester, New York and Kevin G. Johnson of the law firm Klafehn Heise & Johnson PLLC, 109 Main Street, Brockport, New York 14420, are adequate to serve as Class Counsel for the Settlement Class and Subclasses and the Court appoints them as Class Counsel.

5.   The Notice and Claim Forms that were sent to the Settlement Class pursuant to this Court's January 14, 2016 Decision and Order (Dkt. 80) were accurate, objective and informative and were the best practicable means of providing reasonable notice to Class Members of, among other things: (a) the proposed settlement and its effect; (b) the process available to them to request a payment under the settlement; (c) how they could object or opt-out; (d) the time and place of the final fairness hearing; and (e) the applications to be made by class counsel for (i) attorneys' fees and costs and (ii) enhancement payments.   The Court finds that notice of these matters to the Class Members was accomplished in all material respects and that such notice fully met the

requirements of Federal Rule of Civil Procedure 23, due process, the Constitution of the United States, the laws of the State of New York, and all other applicable laws.

6.    The Settlement and the Settlement Agreement are binding in all respects on the Named Plaintiffs and all Class Members who did not timely submit a valid and effective written request for exclusion from the Settlement Class pursuant to the provisions of the Settlement Agreement.

7.    The Court orders that the qualified settlement fund (as defined in the Settlement Agreement) be funded and that payments be made according to the provisions of the Settlement Agreement following the Effective Date of the Settlement Agreement.

8.    The Court finds that the administrative costs in the amount of $27,500 are reasonable and approves payment to the Claims Administrator of such administrative costs from the qualified settlement fund as specified in the Settlement Agreement following the Effective Date of the Settlement Agreement.

9.    If, for any reason, the Effective Date of the Settlement Agreement does not occur, the Settlement Agreement shall be deemed null and void, and shall not be used for any purpose whatsoever in any further proceeding(s) in the Action or in any other suit, action, or proceeding; the Court's certification of the Settlement Classes shall be void and of no effect; this Order shall be vacated; and the Parties will be returned to their respective positions *nunc pro tunc* as those positions existed immediately prior to the execution of the Settlement Agreement.

10.     In accordance with Paragraph 14(a) of the Settlement Agreement, Class Counsel is hereby awarded attorneys' fees in the amount of $700,000.00 to be paid from the qualified settlement fund as specified in the Settlement Agreement following the Effective Date of the Settlement Agreement.  This award represents one-third of the total settlement amount.  Such an award is reasonable in light of the effort expended and the risk undertaken by Class Counsel and the results of such efforts.

11.     In accordance with Paragraph 14(a) of the Settlement Agreement, Class Counsel is hereby awarded $8,419.70 to reimburse them for their actual litigation costs to be paid from the qualified settlement fund as specified in the Settlement Agreement following the Effective Date of the Settlement Agreement.

12.     In accordance with Paragraph 15(c) of the Settlement Agreement, Named Plaintiffs Zenaida Acevedo, Kelsie Reed, Joanna Dwyer, and Colleen Pitts are hereby awarded an enhancement payment in the amount of $15,000 each to be paid from the qualified settlement fund as specified in the Settlement Agreement following the Effective Date of the Settlement Agreement.

13.     In accordance with Paragraph 15(d) of the Settlement Agreement, opt-in Plaintiff Tracy Slocum is awarded $30,000.00 in consideration of the dismissal of the action *Slocum v. WorkFit Medical, LLC et al.*, No. 15-cv-6186-EAW (W.D.N.Y.).

14.     These enhancement payments are in addition to any amounts the Named Plaintiffs or Plaintiff Slocum may otherwise receive from the Settlement as members of the Settlement Class under the Settlement Agreement.

15.    Upon the Effective Date of the Settlement Agreement, case numbers 6:14-cv-06221 EAW and 6:15-cv-06186 EAW shall be deemed dismissed with prejudice in their entirety. The parties are to bear their own costs, except as otherwise provided in the Settlement Agreement and this Order. The Court shall retain jurisdiction over the above-captioned actions for the purpose of resolving any issues relating to the administration, implementation, or enforcement of the Settlement Agreement and this Order.  The parties are to inform the Court immediately upon the occurrence of the Effective Date of the Settlement Agreement.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge


Dated:      May 20, 2016
            Rochester, New York

- 28 -